UNITED STATES COURT OF APPEALS
TENTH CIRCUIT

Case No. 16-1065

RANDALL J. HATLEE and RONALD L. SWIFT

      Plaintiffs-Appellants,

vs.

ASHLEIGH OLDS,

      Defendant-Appellant.

_____

On Appeal From the United States District Court
For the District of Colorado
The Honorable Raymond C. Moore, District Judge
D.C. No. 13-cv-02469-RM-MJW

_____

APPELLANTS' OPENING BRIEF

_____

Brice A. Tondre
215 S. Wadsworth Blvd. #500
Lakewood, CO 80226-1566
303-296-3300

STATEMENT REGARDING ORAL ARGUMENT

Oral argument is desired and requested.

## TABLE OF CONTENTS

TABLE OF AUTHORITARIES…………………………………………3

STATEMENT OF PRIOR OR RELATED APPEALS……………………5

STATEMANT OF JURISDICTION…………………………………………6

STATEMENT OF THE ISSUES……………………………………………..7

STATEMENT OF THE CASE………………………………………………7

STATEMENT OF THE FACTS……………………………………………...8

SUMMARY OF ARGUMENT……………………………………………..19

ARGUMENT……………………………………………………………..22

    A.  Standard of Review…………………………………………………..22

    B.  Scope of Review……………………………………………………..23

    C.  Dr. Olds Was Acting Under Color of State Law………………24

    D.  Dr. Olds Did Not Have Statutory Immunity……………………28

    E.  Neither Deputy Hardey Nor Dr. Olds Had probable cause to Support Seizure or Prosecution…………………………………30

    F.  Dr. Olds is Not Entitled to Claim Qualified Immunity…………31

CONCLUSION AND REQUEST FOR ORAL ARGUMENTS…………32

CERTIFICATES OF COMPLIANCE AND DIGITAL SUBMISSION…33

CERTIFICATE OF SERVICE……………………………………………34

ATTACHMENTS :  ORDER

TABLE OF AUTHORITIES

CASES:

Allen v. Muskogee, Oklahoma, 119 F.3d 837 (10th Cir. 1997)……………..22

Anderson v. Liberty Lobby, Inc., 477 U.S.242 (1986)………………………22

Bruning v. Pixler, 949 F2d 352(10th Cir. 1991)……………………………...28

Cortez v. McCauley, 478 F.3d 1108, (10th Cir. 2007)………………………14

DeLoach v. Bevers, 922F.2d 618(10th Cir. 1990)……………………………28

Felder v. Casey, 487 U.S.131,(1988)…………………………………………...28

Filarsky v. Delia, 132 S.Ct. 1657 (2012)……………………………………..31

Gallagher v. Neil Young Freedom Concert,49 F.3d 1442, (10th Cir. 1995)... 25

Howlett v. Rose,496 US.356 (1990)……………………………………………28

Lundstrom v. Romero, 616 F.3d 1108, (10th Cir.2010)………………………14

Martinez v. California, 444U.S.277(1980)……………………………………..28

Murdock v. Life Indian Tribe,975 F.2d 683,(10th Cir. 1992)………………..30

Pierce v. Wigglesworth, 903 P.2d 656(Colo.App.1994)……………………30

Wagenmann v. Adams, 829 F.2d196 (1st Cir. 1987)…………………………25

Wyatt v. Cole, 504 U.S. 158,(1992)……………………………………………….31


RULES:

Fed.R.App. P. 4(a)(1)(A)………………………………………………… 6


Rule 56 (e) (1) F.R.C.P.………………………………………………...23

STATUTES:

C.R.S. §12-64-121…………………………………………………..28

C.R.S. §18-9-202(b)(1.8)………………………………………………30

28 U.S.D. §1291………………………………………………… 6

28 U.S.C. §1331 ………………………………………………… 6

28 U.S.C. § 1367………………………………………………… 6

42 U.S.C. § 1983……………………………………………… 7,23,25

## PRIOR OR RELATED APPEALS

There are no related or prior appeals.

## STATEMENT OF JURISDICTION

Plaintiffs commenced this action by filing their original complaint on September 10, 2013. (Aplt. App. at 3). Plaintiffs filed their first amended complaint (Aplt. App. at 244-36) on November 1, 2013. The United States District Court for the District of Colorado had jurisdiction of the matters alleged in the complaint and amended complaint pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1367 in that two of the causes of action alleged therein were under the laws and Constitution of the United States and the other two causes of action were so related to the federal causes of action that they formed part of the same case or controversy under Article III of the United States Constitution.

On September 29, 2015, the United States District Court for District of Colorado issued its Order granting Defendant Ashleigh Olds' motion for summary judgment. (Aplt. App. at 448-495)

On February 11, 2016, final judgment was entered based upon the Court's Order. (Aplt. App. at 498-501)

Plaintiffs timely filed their Notice of Appeal on February 24, 2016 pursuant

to Fed.R. App. P. 4(a) (1)(A). (Aplt. App. at 502-503). This court has jurisdiction of this matter under 28 U.S.C. §1291.

## STATEMENT OF THE ISSUES

I.      Whether there are genuine issues of material fact which preclude Summary Judgment in this matter in favor of Defendant Olds?

II.     Whether the facts and inferences for which there is support in the record preclude judgment as a matter of law in favor of Defendant Olds?

## STATEMENT OF THE CASE

This action was brought pursuant to 42 U.S.C. §1983 by Randall L. Hatlee and Ronald L. Swift against Fred Wegener, the Sheriff of Park County, Monte Gore, his Undersheriff, Sgt. Bobbi Priestly and Cindy Hardey, two of his deputies and Ashleigh Olds, a veterinarian.

Plaintiffs initiated this action by their original Complaint on September 10, 2013 (Aplt. App. at 3) and filed an amended Complaint on November 1, 2013. Aplt. App. at 24-36) The Park County Defendants filed their Answer to the amended Complaint on November 15, 2013. (Aplt. App. 6) Defendant Olds filed a motion to dismiss the amended Complaint.  It was not ruled on until September 29, 2015. (Aplt. App. at 470) Consequently Dr. Olds did not file an answer.

All Defendants were sued for violations of the Fourth Amendment and, the Sheriff was also sued for breach of contract and Olds was also sued for malicious prosecution and abuse of process. (Aplt. App.. at 24-36)

On December 15, 2015, the Park County Defendants filed three motions for Summary Judgment and a motion for judgment on the pleadings.. (Aplt. App. at 11-12) Defendant Olds filed a motion for summary judgment on December 15, 2014. (Aplt. App. at 71-90).

On September 29, 2015, the District Court issued an Order granting summary judgment on all claims against Defendant Olds. In the same Order the Court granted summary judgment with respect to all claims against the Park County Defendants except the breach of contract claim against the Sheriff and the Fourth Amendment claim against Deputy Hardey for material omissions from the affidavit she used to obtain a seizure warrant. (Aplt. App. at 448-495)

The remaining claims against the Park County Defendants were settled and a final judgment as to all parties and all claims was issued on February 11, 2016. (Aplt. App. at 500-501).

## STATEMENT OF THE FACTS

On February 13, 2012 the Sheriff of Routt County and two of his deputies traveled to Park County to check on two horses which were the subject of an

animal cruelty case in Routt County. The two horses were boarded at Echo Valley

Ranch which was managed by Messrs. Hatlee and Swift. (Aplt. App. at 453-454)

Upon arrival at the Ranch the Routt County group learned that one of the

horses they came to check on, Little Feather, died five weeks previously. The other

horse, Bear, was found to be in deplorable condition. The group observed six other

horses which were in a condition similar to that of Bear. They reported the

situation at the Ranch on February 13, 2012, to Sgt. Priestly of the Park County

Sheriff's Office. (Aplt. App. at 454)

On February 14, 2012, Sgt. Priestly informed Deputy Hardey of the situation

at the Ranch. Deputy Hardey scheduled a welfare check of the horses for February

16, 2012. Aplt. App. at 454)

Deputy Smith contacted Barbara Wright of Harmony Horse Works in

Conifer, Colorado, for assistance in picking up Bear. Ms. Wright arranged for her

veterinarian, Ashleigh Olds, to accompany Deputy Smith and transport Bear to

Olds' clinic, Aspen Creek Veterinary Hospital. (Aplt. App. at 454)

On February 16, 2012, Deputy Hardey went to the Bailey Substation where

she was met by Dr. Olds who had been engaged to seize Bear pursuant to a court

order issued out of Routt County. Two Park County Deputies were engaged to

accompany Dr. Olds. (Aplt. App. at 107)

9

While Dr. Olds was loading Bear in her trailer Deputy Hardey was conducting her welfare check. After loading Bear, Dr. Olds and Deputy Hardey walked around the area and observed the horses. Seven of the forty horses were very skinny, one of which was down. Deputy Hardey observed that hay and water was available to the horses.(Aplt. App. at 112). After the public outrage regarding Park County's refusal to seize the horses began, Dr. Olds falsely claimed in her report that the horses did not have food or water. (Aplt. App. at 123).

After walking around with Deputy Hardey, but without obtaining a history with respect to the weight loss of the horses and without examination and laboratory testing, Dr. Olds demanded that Maggie be euthanized and that the other six horses be seized by Deputy Hardey. Dr. Olds stated without scientific analysis or basis that the cause of the horses' condition was starvation. (Aplt. App. at 112).

Deputy Hardey communicated this demand to her supervisor, Sgt. Priestly, who told Deputy Hardey to tell Dr. Olds to take Bear and leave the Ranch. (Aplt. App. at 112).

Captain Bonnelyke told them to get an independent veterinarian to evaluate the seven horses.  He did not consider Dr. Olds to be independent and with good cause since she seemed to have a personal stake. (Aplt. App. at 227)

The veterinarians  who Messrs. Hatlee and Swift relied upon, Drs. Horton

10

and Burton, were concerned that toxicity was the culprit. (Aplt. App. at 112).

After Dr. Olds left the Ranch, Sgt. Priestly conferred with Dr. Kate Anderson, a Department of Agriculture Veterinarian , Scott Dutcher,  Chief Investigator with the Bureau of Animal Protection,  Dr. Britt of  Rocky Top Veterinary Services and Deputy Hardey regarding what should be done. The consensus was to leave the horses in the care and custody of Messrs. Hatlee and Swift and issue a Notice of Warning giving them one month to show that the condition of the horses was not due to their neglect. Deputy Hardey did not believe that leaving the horses with Messrs. Hatlee and Swift would endanger them and, based on unanimous agreement, issued the warning. (Aplt. App. at 112-114).

Failure to seize the horses and charge Messrs. Hatlee and Swift with animal cruelty infuriated Dr. Olds. Shortly after she arrived at her clinic and unloaded Bear, Dr. Olds e-mailed Deputy Hardey and complained to Barbara Wright and Shelly Ferraro that Park County Sheriff's Department had refused to seize the horses that had been starved by Messrs. Hatlee and Swift. Significantly, in her e-mail Dr. Olds stated that the horses had no food and water which is a bald face lie and contrary to the report of Deputy Hardey. The e-mail again urges seizure of the six horses. (Aplt. App. at 121-122) Thus began the pressure on the Park County Sheriff's Department to seize the horses and bring criminal charges against Messrs.

11

Hatlee and Swift.

In a February 17, 2012, e-mail to the Park County Sheriff's Office, Barbara Wright states that she was present a Dr. Olds' hospital when she brought Bear in on February 16, 2012. Bear became known as Little Big Man. In the e-mail Wright urges the Sheriff to reconsider the decision to allow the horses, which she states are in worse condition than Bear, to remain in the custody and care of Messrs. Hatlee and Swift. (Aplt. App. at 128) Ms. Wright's information had to come from Dr. Olds.

In a February 18, 2012, e-mail to Monika, Barbara Wright states: "We will wait and see what happens after the e-mail blast goes out." (Aplt. App. at 132). On February 19, 2012, Barbara Wright acknowledges receipt of a report  on Little Big Man (Bear) from Dr. Olds and reports that the Ferraros "are helping with lobbying Officialdom to move on this travesty." The e-mail states that the problems of the horses were caused by starvation and not anything else. (Aplt. App. at 134).

By February 19, 2012, the Park County Sheriff's Office was inundated with telephone calls and e-mails which rendered the animal control division dysfunctional. (Aplt. App. at 205-206).There was fear that there would be an attempt by concerned citizens to rescue the horses. Undersheriff Gore was aware of all this and wanted to avoid potential problems. (Aplt. App. at 115, 143-150). He

thought moving the horses would defuse the situation. The task of asking Messrs. Hatlee and Swift to enter into an agreement to place the six horses in protective custody was delegated to Deputy Hardey. Sgt. Priestly drafted the agreement. Deputy Hardey induced Messrs. Hatlee and Swift to enter into the agreement. The horses were moved to Kirstin LeBeau's ranch. (Aplt. App. at 205-206).

The Notice of Warning (Aplt. App. at 119) and the Protective Custody Agreement (Aplt. App. at 140) provided Messrs. Hatlee and Swift with the opportunity to prove that the deplorable condition of the seven horses was not due to neglect. The illegal seizure of the horses deprived them of this opportunity.

Significantly, while the horses were at the LeBeau ranch they did not have much of an appetite which indicates that they were sick, not malnourished. The facts show that what Hatlee and Swift were doing was the appropriate therapy. At no time during the period February 16 through 23, did Deputy Hardey or Sgt. Priestly consider the horses to be endangered by remaining with the owners.

The move did not eliminate the threats. The outrage continued. The protesters would accept nothing short of seizure and prosecution. This is exemplified by Shelly Ferraro's e-mail of February 21, 2012, to Priestly (Aplt. App. at 146) which states:

> Why don't you people do yourself a favor instead of continuing to shoot yourself in the foot. The community wants to know that the precious horses

13

are getting intense care in a medical hospital. They want to know that the horses are getting iv's and are being rehydrated and given electrolytes, water and food. Why do you continue to refuse to help the community in knowing that these little horses are safe and are truly in competent care. It's pretty simple, get over your power trip and settle  this horrific situation down, or your just going to continue to get jammed by the public, this isn't going away anytime soon….if you don't know already this is all over the country and people are watching and ready to take more action.

Deputy Priestly forwarded this e-mail to Undersheriff Gore marked "Importance: Hi". Gore immediately contacted Dr. Olds to inquire if she would temporarily take over care of the horses. She responded that she would (Aplt.App.at 144). After receiving confirmation that Dr. Olds had space available to provide temporary care Deputy Hardey commenced preparing an affidavit for a warrant to seize Plaintiffs' horses. (Aplt. App. at 157-158).

Thus, the conspiracy was formed and the overt acts of seizure and prosecution ensued.

A warrant to seize the six horses was issued on February 22 and executed on February, 23. Messrs. Hatlee and Swift were charged with animal cruelty on February 23. (Aplt.App. at 405).

It was at this point that the conspiracy was formed. To this point the Park County Sheriff's Office followed the prudent and legal approach of investigating before acting as is required by *Lundstrom v. Romero*, 616 F.3d 1108, 1120 (10th

14

Cir. 2010) and *Cortez v. McCauley*, 478 F.3d 1108, 1117 (10th Cir. 2007).

Park County Sheriff's Office was allowing Messrs. Hatlee and Swift one month to show that the horses were not neglected. Their veterinarians, Drs. Horton and Burton, suspected that the horses had ingested a toxic substance. They counseled going slowly while they conducted tests to determine the cause of the problem. This reasonable and prudent approach was squelched after just 6 days by the illegal seizure of the horses. (Aplt. App. at 177-188; 211-223; 313-315; 354-357 ).

In order to obtain a warrant to seize the horses, Deputy Hardey omitted numerous material facts from her affidavit. The most significant facts which she omitted are that the animal cruelty law permitted seizure of animals only if leaving them with their owner endangers them. Deputy Hardey did not inform the court which issued the warrant that neither she nor Sgt. Priestly believed that the horses were endangered by leaving them with Messrs. Hatlee and Swift. She also did not inform the issuing judge that: (1) the Park County Sheriff's Office had entered into an agreement with Hatlee and Swift to give them 30 days to show the horses were not neglected; (2) two veterinarians, a Department of Agriculture official, Deputy Hardey and Sgt. Priestly agreed that the horses would not be endangered by leaving them with Hatlee and Swift. (Aplt.App. at 106-110; 111-117).

15

In two subsequent hearings the trial judge ruled that, because of the omissions the warrant was illegally obtained and that warrant was obtained in bad faith. (Aplt. App. at 166, 316-324).

Deputy Hardey claimed that she obtained the warrant because she was told by Dr. Horton, Hatlee and Swift's veterinarian, that they waited too long to bring them in from the pasture to address their loss of weight. Significantly, neither Deputy Hardey nor Dr. Horton investigated if there was any delay or the length of any delay. (Aplt. App. at 318-320).

It is a reasonable inference that the alleged delay was pretextual and, based on the sequence of events, that the true reason was to silence the uproar which had inundated the Sheriff's Office and rendered its animal control division dysfunctional.

In her victory lap on February 24, 2012, the day after the horses were seized, Dr. Olds, in an e-mail to Monika (Aplt. App. at 152), proudly crows:

> Thank you for all your help. Barb at Harmony really got the publicity going and everyone else helped keep the fire on. I don't know if this would have been taken seriously without all the public pressure. Hopefully the end result will be that justice is served and the horses are homed where they will be FED.

The thank you note is clear admission by Dr. Olds that her goal had been achieved through the pressure she set in motion. She jumped to the rash conclusion

16

that the horses had been starved and opposed the rational and prudent approach of following reasonable veterinary medical practice. Dr. Olds ignoed the teaching of her hospital which published a professional paper which counsels that , "Solving the puzzle of anemia can be quite a diagnostic challenge." (Aplt. App. at 142) The subject horses here were anemic. The publication notes that there are many causes of anemia. Dr. Olds did not make a scientific analysis. She merely jumped to a conclusion and pressed for and achieved a result which thwarted the efforts of Messrs. Hatlee and Swift and their veterinarians to  come to a scientific conclusion.

Three veterinarians have stated that Dr. Olds did not follow reasonable veterinary practice. (Aplt. App. at 177-188; 212-223; 313-315).This was both unreasonable and malicious.

This new age vigilantism by e-mail worked. It was sparked by Dr. Olds report that the horses had been starved. The publicity caused Undersheriff Gore to take over supervision of the case from Bonnelycke, thus silencing his insistence on an independent opinion.

On April 7, 2012, a fundraiser was held for the seized horses. Deputy Hardey, Sgt. Priestly, Captain Bonnelycke and Undersheriff Gore attended the fundraiser. Sheriff Wegener admits that they were trying to appease this group which was complaining about the way the Sheriff's office was handling the case.

They went so far as to give investigative materials to Barbara Wright who disseminated them nationwide.

On April 10, 2012, the trial judge in the animal cruelty prosecution of Messrs. Hatlee and Swift, after an evidentiary hearing, ordered the horses returned to their owners because he concluded that the animal control officers did not have probable cause to believe that the horses were endangered by remaining with Messrs, Hatlee and Swift. ( Aplt.App. at 151-155). This sparked another public outcry.(Aplt.App. at 163-169).

On April 11, 2012, the day after the judge ordered the horses returned, Dr. Olds sent Undersheriff Gore an e-mail in which she expressed her dissatisfaction with respect to the way the case was being handled by the district attorney. She states, "I am as appalled as everyone else as to how this can happen. I am very concerned that the case is not being presented to its maximum effectiveness based on the results and some of the comments in this last email from Bobbi Priestly…." (Aplt. App. at 168). She also states that the "public is already going bananas and this is about to erupt into another media storm." (Aplt. App. at 168). Gore responds: "I will get with Sgt. Priestly and Lt. Bonnelycke and our county attorney to analyze a strategy for going forward. We are here with you." (Aplt. App. at 168).

The foregoing shows Dr. Olds pride in her publicity campaign, her confidence in its power and her continued reliance on it.

The pressure to continue the prosecution began. It was an election year, the Sheriff's Office was opposing re-election of the District Attorney for declining to prosecute some cases the Sheriff's Office submitted, the public was questioning the district attorney's competence, so the district attorney had no alternative but to continue the prosecution. He could not politically afford to dismiss this high profile case and agreed to continue the prosecution though he knew he could not win it.

After a five day trial Messrs. Hatlee and Swift were acquitted. Immediately following the acquittal the district attorney stated to Mr. Hatlee and his attorney, "This is the last time I will be pressured into prosecuting a case I knew I could not win." (Aplt. App. at 289-290).

## SUMMARY OF ARGUMENT

This case had its genesis in a report by members of the Routt County Sheriff's Office to the Park County Sheriff's Office that there were a number of horses in bad condition on a ranch they had visited in Park County.

On the basis of that report the Park County Sheriff's Office commenced an investigation. The investigation commenced on February 16, 2012, with a joint visit to the ranch by representatives of the two Sheriff's Offices.

Dr. Olds was engaged by the Routt County Sheriff's Office to aid with the pick up of a horse named Bear.

Dr. Olds noted that Bear and seven other horses were in bad condition. She demanded that one of the horses be euthanized and the other six be seized.

The Park County Sheriff's Office, after consulting with a State veterinarian and the State head animal control investigator, decided to issue a notice of warning and give Messrs. Hatlee and Swift  one month to demonstrate that the  horses were not abused.

Dr. Olds disagreed with the decision of the Park County Sheriff's Office and mounted a publicity campaign designed to cause it to seize the horses.

The first thing the Park County Sheriff's Office did in response to the public uproar was to place the horses in protective custody on February 19, 2012. This resulted in an even greater public uproar which inundated the Park County Sheriff's Office with e-mails and telephone calls and rendered the animal control section dysfunctional.

As the result of a particularly strong e-mail from one of the leaders of the public uproar on February 21, 2012, Undersheriff Gore contacted Dr. Olds with whom he reached an agreement for her to take temporary custody of the six horses. The only way this could be accomplished was through seizure.

On February 22, 2012, six days into the investigation, Deputy Hardey obtained a warrant to seize the horses. As was later determined, the warrant was based upon an affidavit which was issued on the bad faith omission of material facts.

On February 23, 2012, the horses were seized. On April 10, 2012, the horses were ordered returned upon a judicial determination that the warrant was illegally obtained.

The judicial determination sparked another public uproar. This one was directed at the District Attorney whom Dr. Olds blamed for the order to return the horses. Undersheriff Gore responded that he would put pressure on the District Attorney to do a better job.

After a verdict of not guilty, the District Attorney remarked that this is the last time he would allow himself to be pressured into trying a case he knew he could not win.

There are facts upon which a jury can find that Dr. Olds was a willful participant in a joint action which violated the civil rights of Messrs. Hatlee and Swift.

The facts do not support statutory immunity for any of Dr. Olds' conduct because she was not acting reasonably and most, if not all, of her conduct was

outside of her statutory responsibility.

Dr. Olds did not have probable cause to urge seizure of the six horses or prosecution of Messrs Hatlee and Swift.

Under the facts of this case, Dr. Olds may not, as a matter of law, claim qualified immunity.

## ARGUMENT

### A. Standard of Review.

A grant of summary judgment is reviewed de novo, applying the same legal Standards applicable in the District Court under Rule 56(c) F.R.C.P. Summary judgment is appropriate only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. A disputed fact is "material" if it might affect the outcome of the suit under the governing law, and the dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. In determining if there are genuine issues as to material facts, a factual record and reasonable inferences therefrom must be construed, in the light most favorable to the non-movant. See, *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986); *Allen v. Muskogee, Oklahoma*, 119 F.3d 837, 839-840 (10th Cir. 1997).

The court may not weigh the credibility of witnesses and other evidence in

ruling on a motion for summary judgment. Evaluating credibility, weighing

evidence and drawing factual inferences are all functions reserved for the jury.

*Anderson v. Liberty Lobby, Inc., supra, at* 255.

As the District Court states in footnote 1 of its Order (Aplt. App. at 461) a
motion was made to allow supplementation of Plaintiffs' briefs in opposition to the
motions for summary judgment. The motion was grounded on Rule 56(e) (1)
F.R.C.P. which provides:

If a party fails to properly support an assertion of fact or fails to properly
address another party's assertion of fact as required by Rule 56(c), the court
may:
(1) give an opportunity to properly support or address the fact;


…Before deciding on other possible action, subdivision (e)(1) recognizes
that the court may afford an opportunity to properly support or address the
fact. In many circumstances this opportunity will the court's preferred first
step.

In its Order the District Court complains about deficiencies in the Plaintiffs'

presentation, commenting that judges are not like pigs looking for truffles.

(Aplt.App. at 461;469) Plaintiffs' counsel requested leave to cure deficiencies

which he belatedly realized occurred because of his illness. (Aplt. App. at 419-421)

**B. Scope of Review**

The claims against Dr. Olds are set forth in the First, Second and Fourth

Claims for Relief of the First Amended Complaint.

The First and Second Claims for Relief were both brought pursuant to 42

U.S.C. §1983 alleging that the joint action of  Dr. Olds and the Park County

Defendants caused the seizure of 6 of Plaintiffs' horses and the prosecution of Plaintiffs for animal cruelty.

The District Court granted summary judgment in favor of Dr. Olds with respect to the First and Second Claims for Relief on the grounds that Dr. Olds was not acting under color of State law.

The Fourth Claim for Relief alleges a common law claim against Dr. Olds for malicious prosecution and abuse of process.

The District Court granted summary judgment in favor of Dr. Olds with respect to the Fourth Claim for Relief on the grounds that she was entitled to statutory immunity and because there was probable cause to prosecute.

**C. Dr. Olds was acting under color of state law.**

The heart and soul of the District Court's ruling that Dr. Olds was not a State actor is found on page 20 of its Order. (Aplt. App. at 467) where it states:

> Even if this court were to accept Plaintiff' dubious contention that Dr. Olds was responsible for creating a "public outcry" that was directed toward the Park County Sheriff's Office, and that the Park County Defendants reacted to the "public outcry" by seizing the Six Horses and having Plaintiffs prosecuted, this fact pattern still would not trigger liability under the joint action doctrine. The joint action doctrine requires that the unconstitutional action be founded upon "*agreement* and *concerted action*" between private citizens and state officials. [citation omitted]. The concerted action may take the form of a "conspiracy, prearranged plan, customary procedure, or policy that substituted the judgment of a private party for that of the police or allowed a private party to exercise state power. [citation omitted]. Here, the record before the Court does not show any overt or implied "agreement [or]

24

concerted action" between Dr. Olds and the Park County Sheriff's Office.
[citation omitted]. To the contrary, the record indicates, and Plaintiffs
themselves assert, that Dr. Olds' request that the Six Horses be seized was
initially rejected by the Park County Defendants. Even assuming that the
Park County Defendants ultimately decided to seize the Six Horses based on
their perception of public pressure, that would still not constitute "agreement
and concerted action" with Dr. Olds-the connection between Dr. Olds'
actions, the public reaction to the information disseminated by Dr. Olds, and
the Park County Defendants' taken in reaction to the public response
is simply too attenuated to fit within the joint action doctrine. [citation
omitted]. Plaintiffs have not pointed to any case law where a court employed
this doctrine when presented with facts containing such a tenuous causal
chain, nor has this Court located any such case law.

The District Court erred in several respects in the above quoted ruling. The

reference to key evidence as dubious, attenuated and tenuous is impermissible

weighing of evidence. The District Court's statement that Plaintiff s have not

pointed to case law that applies the joint action doctrine to a situation where  a

private citizen causes a State actor to perform an unconstitutional act is incorrect.

A private citizen can be liable under 42 U.S.C.§1983 if he or she is deemed

to be a state actor if the private party is a willful participant in joint action with the

State or its agents. The joint action test for State action is whether both the private

actor and the public actor share a common unconstitutional goal. A private actor

who exerts influence over a police investigation in order to cause the unlawful

seizure of a person is deemed to be a state actor. *Gallagher v. Neil Young Freedom*

*Concert*, 49 F.3d 1442, 1453-1457, (10th Cir. 1995); *Wagenmann v. Adams*, 829

F.2d196, 209-211(1st Cir. 1987). That is precisely what happened here

From her first contact with the six seized horses on February 16, 2012, Dr. Olds demanded that they be seized. That afternoon she sent an e-mail to Deputy Hardey in which she stated that the down horse should be euthanized or transported to a hospital and that she had grave concerns for the other six horses if left with Messrs. Hatlee and Swift. She claimed that all seven were suffering from starvation. In her e-mail she stated that the six horses did not have food and water which is contrary to what Deputy Hardey reported.

Dr. Olds knew that the horses were being left with Messrs. Hatlee and Swift when she sent the e-mail. It is a fair inference that it was designed to pressure the Sheriff's Office into seizing the horses.

That afternoon Dr. Olds complained to Barbara Wright and Shelly Ferraro about Park County Sheriff's Office's refusal to seize six horses which had been starved by Messrs. Hatlee and Swift. That afternoon Barbara Wright sent an e-mail to Park County Sheriff's Office urging seizure of the six horses.

On February 18, 2012, Barbara Wright sent an e-mail to Monika saying wait and see what happens when the e-mail blast goes out.

By February 19, 2012, the Park County Sheriff's Office was inundated with e-mails and telephone calls which rendered the animal control division

dysfunctional. (Aplt. App. at 205-206).

In hopes that moving the horses would quell the uproar the Protective Custody Agreement was entered into.

Placing the horses in protective custody did not satisfy the protesters as is demonstrated Shelly Ferraro's threat in her February 21, 2012, e-mail.

It is at this point that Undersheriff Gore contacts Dr. Olds to determine if she will house the horses at her clinic. The only way this could happen would be if the horses were seized. On February 22, 2012, Dr. Olds agreed to take custody.

On February 22, 2012, after Dr. Olds agreed to take custody, Deputy Hardey prepared an affidavit for a warrant to seize the six horses. A warrant was issued that day and executed the next. Deputy Hardey, as an animal control agent knew that the horses could not legally be seized because they were not endangered but seizure was the only way to quell the public uproar.

Deputy Hardey's pretextual reason for a seizure warrant was stated in her affidavit as follows:

> …I spoke with Swift's veterinarian Dr. Horton, from Timberline Equine Veterinarian Hospital, who believes that Swift waited too long to rectify the problem and could have avoided the situation. I believe that if Swift had noticed the horses' condition sooner they would not be in the condition they are in today. Based on the above statement I believe the horses were neglected.

This is nothing more than a hunch which is not probable cause. Deputy

Hardey admitted under oath that she did not know how much sooner they should have been brought in or even when they were brought in. (Aplt. App. at 318-320).

### D. Dr. Olds Did Not Have Statutory Immunity.

The statutory immunity granted by C.R.S. §12-64-121does not apply to §1983 claims. *See, Martinez v. California*, 444 U.S. 277, 285 n. 8 (1980); *Howlett v. Rose*, 496U.S. 356, 376-77 (1990); *Felder v. Casey*, 487 U.S. 131, 139 (1988).

Dr. Olds claims that the conduct for which she was sued was mandated by C.R.S. §12-64-121which requires a veterinarian "who, during the course of attending or treating an animal, has reasonable cause to know or suspect that the animal has been subjected to cruelty in violation of C.R.S. §18-9-202…shall report or cause a report to be made of the animal cruelty…to a law enforcement agency or the bureau of animal protection."

Two components of the statute are key: (1) reasonable cause to know or suspect animal cruelty arises from things learned through attending or treating the animal; and (2) a report of reasonable findings.

Reasonable cause, like probable cause, must be decided by the jury if there is a dispute regarding the facts. Whether conduct is reasonable is inherently a fact issue. *DeLoach v. Bevers,* 922F.2d 618, 621-622 (10th Cir. 1990); *Bruning v.*

*Pixler,* 949 F.2d 352, 357 (10th Cir. 2004).

Is what Dr. Olds did a report of reasonable conclusions or advocacy of seizure and prosecution without a reasonable basis? In other words, did she act in the way a reasonable veterinarian would act under the same or similar circumstances?

Both Dr. Questen and Dr. Burton have stated that Dr. Olds broadcast of her opinion that the horses were starved was without reasonable cause . She did not do the things necessary to a diagnosis. Ingestion of toxic matter was in the differential and had to be considered. An excellent discussion of an appropriate diagnostic procedure for this type of case was published by Dr. Olds' veterinary hospital. She failed to follow it. Her single, unrelenting focus from start to finish was seizure and prosecution.

If Dr. Olds had immunity it was only with respect to the comments she made while on the Ranch on February 16, 2012 and the e-mail she sent to Deputy Hardey the same day. If that was all she did, it is doubtful that she would have been sued.

Thereafter she was dedicated to overcoming the refusal of the Park County Sheriff's Office to seize the horses and prosecute Messrs. Hatlee and Swift.

She was sued because her persistent efforts resulted in Park County Sheriff's

Office acceding to her wishes. In her e-mail to Monika (Aplt. App. at 152 ) she

thanks her for all her help with the publicity and acknowledges that public pressure

caused what she had been demanding be done.

### E. Neither Deputy Hardey Nor Dr. Olds Had Probable Cause to Support Seizure or Prosecution

The District Court, recognizing that statutory immunity likely did not cover

Dr. Olds' conduct subsequent to February 16, held that there is no viable claim for

malicious prosecution because Plaintiffs are unable to show that the prosecution

occurred without probable cause.

The District Court makes no mention of the wrongful seizure which was

indisputably in violation of C.R.S. §18-9-202(b)(1.8).

The Fourth Claim for Relief is for both wrongful seizure and wrongful

prosecution.

Since Dr. Olds and Park County Sheriffs' Office were acting in concert Dr.

Olds is liable for the conduct of Park County Sheriff's Office. *Pierce v.*

*Wigglesworth*, 903 P.2d 656 (Colo. App. 1994).

In order for a judicial determination in one case to be preclusive in another

case, (1) the issues must be identical; (2) the merits of the prior action have been

fully adjudicated; (3) the party against whom the doctrine is invoked was a party or

in privity with a party in the prior action; and, (4) in the prior action, the party

against whom the doctrine is invoked has had a full and fair opportunity to litigate the issue. *Murdock v. Life Indian Tribe*, 975 F.2d 683, 687 (10th Cir. 1992).

The issue was not tried in the prior action. The issue in the prior case, probable cause to seize the horses, was the only probable cause issue litigated.

### F.  Dr. Olds is Not Entitled to Claim Qualified Immunity.

The District Court did not determine the question of whether Dr. Olds could assert qualified immunity because it held she was not acting under color of State law.

On remand she will probably again assert the qualified immunity defense. She relies on *Filarsky v. Delia*, 132 S.Ct. 1657 (2012). Filarsky was an attorney hired by a fire department to conduct an investigation of the conduct of an employee. The court held he was entitled to qualified immunity because the nature of his engagement was similar to part time employment.

The nature of Dr. Olds' involvement is far different from that of  Filarsky. Dr. Olds acted in a fashion purposely calculated to cause the other Defendants to seize Plaintiffs' horses and prosecute them. Dr. Olds accomplished the seizure and prosecution by inciting public outcry. This is not a situation which situates Dr. Olds for the same immunities as an employee of the Sheriff's Office. Hence, *Wyatt v. Cole*, 504 U.S. 158, 168-169 (1992) which denies applicability of qualified

immunity to the private actor, is the appropriate authority. It holds that private persons who conspire with public officials to violate constitutional rights are not entitled to a qualified immunity defense.

## CONCLUSION

It is respectfully submitted that there are genuine issues with respect to material facts which preclude summary judgment as a matter of law. Therefore, the judgment granting summary judgment in favor of Dr. Olds must be reversed and remanded for trial.

## STATEMENT REGARDING ORAL ARGUMENT

Appellants believe that oral argument will be beneficial to the Court and requests opportunity to present same.

/s/ Brice A. Tondre_____
Brice A. Tondre
215 S. Wadsworth Blvd. #500
Lakewood, CO 80226
303-296-3300

32

CERTIFICATE OF COMPLIANCE

This brief complies with Fed. R. App. P. 32(a)(7)(B) and Fed. R. App. P. 32(a)(5) because there are only 6,643 words and the type size is 14 point.

/s/ Brice A. Tondre_____
Brice A. Tondre

CERTIFICATE OF DIGITAL SUBMISSION

I hereby certify that a copy of the foregoing Appellants' Opening Brief as submitted in Digital Form is an exact copy of the written document filed with the Clerk, that all required privacy redactions have been made and it has been scanned for viruses by McAfee's most recent virus screening program updated April 26, 2016.

/s/ Brice A. Tondre_____
Brice A. Tondre

CERTIFICATE OF SERVICE

I hereby certify that on this the 26th day of April, 2016, I electronically filed a true and correct copy of the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following email address:

John Lebsack
jlebsack@wsteele.com


/s/ Brice A. Tondre_____
Brice A. Tondre

# ATTACHMENT
# ORDER