## CASE NO. 16-1065

## IN THE UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

| | |
|---|---|
| RANDALL J. HATLEE and RONALD L. SWIFT | ) ) ) |
| Plaintiffs – Appellees, | ) ) |
| v. | ) ) |
| ASHLEIGH OLDS, | ) ) |
| Defendant – Appellant. | ) |

On Appeal from the United States District Court
For the District of Colorado
The Honorable Judge Raymond C. Moore
D.C. No. 12-cv-02469-RM-MJW

## APPELLEE'S ANSWER BRIEF

Respectfully submitted,

JOHN LEBSACK
ADAM GOLDSTEIN
White and Steele, P.C.
600 17TH Street, Suite 600N
Denver, Colorado 80202
(303) 296-2828
jlebsack@wsteele.com
agoldstein@wsteele.com

Oral Argument is requested.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................iv

PRIOR OR RELATED APPEALS...........................................................ix

STATEMENT OF THE ISSUES...............................................................1

STATEMENT OF THE CASE..................................................................2

STATEMENT OF FACTS .......................................................................4

SUMMARY OF ARGUMENT ...............................................................18

ARGUMENT ..........................................................................................18

    I.      Standard of Review ................................................................18

    II.     The District Court Properly Granted Summary Judgment on the 42 U.S.C. § 1983 Claims Because Dr. Olds Did Not Act Under Color of State Law ...............................................................21

          A.    Case Law Interpreting § 1983's "Under Color of State Law" Requirement Supports the District Court's Decision .....22

          B.    Dr. Olds Did Not Act Under Color of State Law ....................27

    III.    Even Assuming Dr. Olds Acted Under Color of State Law, Summary Judgment Remains Appropriate Because Dr. Olds Enjoys Qualified Immunity.................................................33

    IV.    Plaintiffs' State Law Malicious Prosecution Claim Fails as a Matter of Law Because Dr. Olds Is Entitled to Immunity Under Colorado Statute .................................................................38

    V.    Plaintiffs' State Law Malicious Prosecution Claim Against Dr. Olds Fails as a Matter of Law Even in The Absence of Statutory Immunity..............................................................46

STATEMENT OF COUNSEL AS TO ORAL ARGUMENT ...............................50

(TABLE OF CONTENTS – Continued)

CONCLUSION ........................................................................................50

    Certificate of Compliance ...............................................................51

CERTIFICATE OF DIGITAL SUBMISSION AND PRIVACY
REDACTIONS .......................................................................................52

CERTIFICATE OF SERVICE ...............................................................53

**ATTACHMENTS:**

Attachment A, photo of Bear taken February 13, 2012. (Aplle. Supp. App. at 525.)

Attachment B, photo of Bear taken February 16, 2012. (Aplle. Supp. App. at 371.)

Attachment C, photos of Maggie taken February 16, 2012. (Aplle. Supp. App. at 358, 360.)

Attachment D, photos of several of The Six Horses taken February 16, 2012. (Aplle. Supp. App. at 407, 528, 529, 379, 383, 408.)

# TABLE OF AUTHORITIES

## Cases

1-800-Contacts, Inc. v. Lens.com, Inc., 722 F.3d 1229 (10th Cir. 2013)...............19

Adickes v. S. H. Kress & Co., 398 U.S. 144 (1970) ...............................27

Adler v. Wal-Mart Stores, 144 F.3d 664 (10th Cir. 1998) ......................19

Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40 (1999) ............................... 22, 23

Amor v. Arizona, No. CIV 06-499-TUC-CKJ, 2009 U.S. Dist. LEXIS
19606 (D. Ariz. Feb. 27, 2009)...................................................24

Anderson v. Creighton, 483 U.S. 635 (1987) ..........................................35

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986)................................... 19, 20

Arline v. City of Jacksonville, 359 F. Supp. 2d 1300 (M.D. Fla. 2005) ................24

Ashcroft v. al-Kidd, 563 U.S. 731 (2011) ......................................... 34, 35

Benavidez v. Gunnell, 722 F.2d 615 (10th Cir. 1983) ............................23

Boyko v. Parkview Hospital, Inc., No. 1:10 CV 260, 2012 U.S.
Dist. LEXIS 114384 (N.D. Ind. Aug. 14, 2012)......................................25

Brinegar v. United States, 338 U.S. 160 (1949) ....................................43

Briscoe v. LaHue, 460 U.S. 325, 326 (1983)...........................................23

Brown v. Cole, 568 F.App'x 600 (10th Cir. 2014) ...................................35

Brown v. Newberger, 291 F.3d 89 (1st Cir. 2002) .......................................... 24, 25

Cain v. People, 327 P.3d 249 (Colo. 2014) ..........................................42

Cillo v. City of Greenwood Vill., 739 F.3d 451 (10th Cir. 2013)...........................19

iv

## Cases (Continued)

Citizen Potawatomi Nation v. Norton, 248 F.3d 993 (10th Cir. 2001) ............ 21, 33

Cliffs Synfuel Corp. v. Norton, 291 F.3d 1250 (10th Cir. 2002) ...........................19

Cross v. Home Depot, 390 F.3d 1283 (10th Cir. 2004)...........................................21

Dennis v Sparks, 499 U.S. 24 (1980) ................................................................ 27, 32

Estate of Reat v. Rodriguez, No. 15-1001, __ F.3d __, 2016 U.S. App. LEXIS 9788 (10th Cir. May 31, 2016) .....................................................................34

Filarsky v. Delia, __ U.S. __, 132 S.Ct. 1657 (2012)....................................... 37, 38

Florence Oil & Refining Co. v. Huff, 59 P. 624 (Colo. 1900) ...............................47

Gallagher v. Neil Young Freedom Concert, 49 F.3d 1442 (10th Cir. 1995) ................................................................................................. 22, 23, 26, 32

Guinn v. Farmers Ins. Co., 563 F. App'x 653 (10th Cir. 2014) ..............................22

Gurley v. Tomkins, 30 P. 344 (Colo. 1892) ...........................................................47

Haag v. Cuyahoga County, 619 F. Supp. 262 (N.D. Ohio 1985)...........................24

Harlow v. Fitzgerald, 457 U.S. 800 (1982) ..................................................... 35, 38

Hernandez v. Story, 459 F. App'x 697 (10th Cir. 2012) ........................................36

Hewitt v. Rice, 154 P.3d 408 (Colo. 2007)..........................................................3, 46

Hohmann v. Hobble, No. 1:15-CV-1240, 2016 U.S. Dist. LEXIS 5684 (M.D. Pa. Jan. 19, 2016) ......................................................................................25

Jaramillo v. Colo. Judicial Dep't, 427 F.3d 1303 (10th Cir. 2005)........................20

Jenkins v. Wood, 81 F.3d 988 (10th Cir. 1996)......................................................20

Kaufman v. Higgs, 697 F.3d 1297 (10th Cir. 2012).................................................35

**Cases (Continued)**

Kirby v. Dallas Cnty. Adult Prob. Dep't, 359 F. App'x 27 (10th Cir. 2009)... 22, 23

Konas v. Red Owl Stores, Inc., 404 P.2d 546 (Colo. 1965) .....................................47

Lawmaster v. Ward, 125 F.3d 1341 (10th Cir. 1997)................................................20

Lay v. Otto, 530 F. App'x 800 (10th Cir. 2013)........................................................22

Lee v. Town of Estes Park, 820 F.2d 1112 (10th Cir. 1987)....................................23

Lounder v. Jacobs, 205 P.2d 236 (Colo. 1949)................................................. 46, 47

Lugar v. Edmondson Oil Co., 457 U.S. 922 (1982) ......................................... 22, 27

Mitchell v. City of Moore, 218 F.3d 1199 (10th Cir. 2000)....................................21

Montgomery Ward & Co. v. Pherson, 272 P.2d 643 (Colo. 1954) ............ 46, 47, 48

Murphy v. Parker, No. CV 05-3468-PCT-DGC (MEA), 2006 U.S.
Dist. LEXIS 50141(D. Ariz. July 19, 2006) ............................................................24

Murray v. City of Sapulpa, 45 F.3d 1417 (10th Cir. 1995) ....................................20

Pearson v. Callahan, 555 U.S. 223 (2009)....................................................... 34, 35

People in re M.V., 742 P.2d 326 (Colo. 1987) ........................................................43

People v. Archuleta, 980 P.2d 509 (Colo. 1999) .....................................................43

People v. Castaneda, 249 P.3d 1119 (Colo. 2011) ..................................................43

People v. Funez-Paiague, 276 P.3d 576 (Colo. 2012.)............................................43

People v. Gutierrez, 222 P.3d 925 (Colo. 2009)......................................................43

Preston v. New York, 223 F. Supp. 2d 452 (S.D.N.Y. 2002) .................................24

Schenck v. Minolta Office Systems, Inc., 802 P.2d 1131 (Colo. App. 1990).........48

**Cases (Continued)**

Schneider v. Sutter Amador Hosp., No. 2:14-cv-00804 GEB AC PS,
2014 U.S. Dist. LEXIS 152869 (E.D. Cal. Oct. 28, 2014).......................................24

Scott v. Hern, 216 F.3d 897 (10th Cir. 2000) .............................................. 22, 23, 32

Sooner Prods. Co. v. McBride, 708 F.2d 510 (10th Cir. 1983)...............................32

Stanton v. Sims, __ U.S. __, 134 S.Ct. 3 (2013) .............................................. 34, 35

Stewart v. Beach, 701 F.3d 1322 (10th Cir. 2012).......................................... 41, 42

Stone v. Autoliv ASP, Inc., 210 F.3d 1132 (10th Cir. 2000) ...................................19

Stonecipher v. Valles, 759 F.3d 1134 (10th Cir. 2014).........................................35

Swanson v. Town of Mountain View, 577 F.3d 1196 (10th Cir. 2009)........... 34, 35

Thomas v. Beth Israel Hosp., Inc., 710 F. Supp.  935 (S.D. N.Y. 1989) ... 24, 43, 44

Thomas v. Kaven, 765 F.3d 1183 (10th Cir. 2014)...................................................35

Thompson v. Hiwan Ridge Dev. Co., Inc., 84 P.3d 496 (Colo. 2004)....................46

Tiscareno v. Frasier, 603 F. App'x 672 (10th Cir. 2015) .......................................36

Tomberlin v. Clark, No. 2:13-cv-01111-LSC, 2015 U.S. Dist. LEXIS
105784 (N.D. Ala. Aug. 12, 2015) ..........................................................................25

Tower v. Glover, 467 U.S. 914 (1984) ....................................................................27

Wilkins v. DeReyes, 528 F.3d 790 (10th Cir. 2008) ...............................................36

World of Sleep, Inc. v. La-Z-Boy Chair Co., 756 F.2d 1467 (10th Cir. 1985).......20

Worrell v. Henry, 219 F.3d 1197 (10th Cir. 2000)..................................................23

Wyatt v. Cole, 504 U.S. 158 (1992) ................................................................. 37, 38

**Statutes**

42 U.S.C. §1983 ........................... 1, 2, 18, 21, 22, 23, 24, 25, 29, 30, 32, 36, 37, 38

Colo. Rev. Stat. § 12-64-121 ..................................................... 41, 43, 44

Colo. Rev. Stat. § 12-64-121(1) .................................................... 39, 42

Colo. Rev. Stat. § 12-64-121(4) ................................................ 2, 39, 40, 41, 42

Colo. Rev. Stat. § 18-9-202 ........................................................... 42

**Other Authorities**

Mass. Gen. Laws ch 119, § 51A ..................................................... 25, 26

**Rules**

Fed. R. Civ. P. 56(c)(1)(A), (e)(2)-(3) ................................................ 21

Fed. R. Civ. P. 56(e) .................................................................... 20

## PRIOR OR RELATED APPEALS

None.

Appellee Ashleigh Olds ("Dr. Olds"), through undersigned counsel, submits this Answer Brief:

## STATEMENT OF THE ISSUES

Appellants Randall J. Hatlee and Ronald W. Swift ("Plaintiffs") stated the issues as follows:

"I. Whether there are genuine issues of material fact which preclude Summary Judgment in this matter in favor of Defendant Olds?"

"II. Whether the facts and inferences for which there is support in the record preclude judgment as a matter of law in favor of Defendant Olds?"

Dr. Olds submits that the issues should be framed as the district court did, to the following:

I. Were the claims against Dr. Olds under 42 U.S.C. §1983 properly dismissed because there is no genuine issue of material of fact that Dr. Olds was not acting under color of state law?

II. Even assuming Dr. Olds was acting under color of state law, were the claims under 42 U.S.C. §1983 properly dismissed because there is no genuine issue of material of fact that Dr. Olds is entitled to qualified immunity? (The district

court did not address this issue because its ruling on the preceding issue was dispositive of all claims under 42 U.S.C. §1983. Aplee. Supp. App. at 590.)[1]

III. Was the malicious prosecution claim against Dr. Olds properly dismissed because there is no genuine issue of material of fact that she is entitled to statutory immunity under Colo. Rev. Stat. §12-64-121(4)?

IV. Was the malicious prosecution claim against Dr. Olds properly dismissed because there is no genuine issue of material of fact that Plaintiffs cannot prove a lack of probable cause?

## STATEMENT OF THE CASE

Plaintiffs' amended complaint asserted three claims against Dr. Olds. In summary, those claims are (1) violation of 42 U.S.C. §1983 because of improper seizure of The Six Horses based on a defective warrant, (2) violation of 42 U.S.C. §1983 because of malicious prosecution for animal cruelty, and (3) a state law malicious prosecution.[2] (Aplee. Supp. App. at 14-18.) The District Court correctly granted Dr. Olds summary judgment on all of these claims. (Aplee. Supp. App. at Aplt. 583-591, 615.)

---

[1] Record citations are to page numbers in the Appellees' Supplemental Appendix ("Aplee. Supp. App.") or the Appellants' Appendix ("Aplt. App."). Where applicable, the line or paragraph number will be identified ("100:1" refers to line 1 on record page 100, and "100:¶1" refers to paragraph 1 on record page 100).

[2] The breach of contract claim (Third Claim for Relief) was only against the other defendants. (Aplee. Supp. App. at 10.)

The opening brief incorrectly describes Plaintiffs' state law claim. (Op. Brief at 8, 24.) The brief refers to the state law claim as based on "malicious prosecution and abuse of process." (Opening Brief at 8.) In the district court, however, Plaintiffs did not raise the issue of abuse of process; they consistently referred to their state law claim as a claim for malicious prosecution. The amended complaint did not allege the elements of abuse of process under Colorado law.[3] In the amended complaint, the state law claim is based on allegations that the "criminal case was brought against the Plaintiffs and six of their horses were seized on the basis of statements made by Defendant Olds which caused an outcry that resulted in the seizure and prosecution. *** Defendant Olds' statements were false and unfounded and therefore without probable cause." (Aplee. Supp. App. at 17-18.)

Plaintiffs consistently referred to the state law claim as a malicious prosecution claim. In responding to Dr. Olds' motion to dismiss, Plaintiffs called it a "common law malicious prosecution claim." (Aplee. Supp. App. at 56, 33.) In their response to Dr. Olds' motion for summary judgment, Plaintiffs referred to the state law claim as a "common law malicious prosecution claim." (Aplt. App. 104.) In the Final Pretrial Order, Plaintiffs described the state law claim as follows: "Plaintiffs also claim…that Defendant Olds maliciously caused Plaintiffs to be

---

[3] "In Colorado, abuse of process requires proof of (1) an ulterior purpose in the use of judicial proceedings; (2) willful actions by a defendant in the use of process that are not proper in the regular conduct of a proceeding; and (3) damages." *Hewitt v. Rice*, 154 P.3d 408, 414 (Colo. 2007).

prosecuted and caused the prosecution to be continued." (Aplt. App. 38.) The district court referred to the state law claim as "what appears to be a malicious prosecution claim" and entered summary judgment based on this understanding. (Aplee. Supp. App. at 582, 590-591.)

## STATEMENT OF FACTS

This case arises from an underlying criminal case in which Plaintiffs were charged with misdemeanor counts of animal cruelty. Dr. Olds, a licensed veterinarian and the owner of Aspen Creek Veterinary Hospital in Conifer, Colorado, was involved in that case as a witness. (Aplee. Supp. App. at 535:¶1, 536, ¶3; 60:7-10; 63:8-11.) Dr. Olds is board certified in equine medicine, and 95 percent of her practice focuses on horses. (Aplee. Supp. App. at 536, ¶2, 3; 61:20-62:12; 63:12-24.) The other defendants in this case worked for the Park County Sheriff's Office. (Aplee. Supp. App. at 537:¶5; 90:20-91:5; 144:7-17; 145:6-146:8; 148:18-24; 158:7-20; 165:7-13.) Dr. Olds is not, and never was, an employee or agent of the Park County Sheriff's Office. (Aplee. Supp. App. at 537:¶6; 167¶3.)

Dr. Olds' material involvement in the underlying matter occurred on February 15 and 16, 2012. On February 15, she was asked to care for a horse that the Routt County Sheriff's Office was impounding in Park County. (Aplee. Supp. App. at 537:¶7, 542:¶24; 75:7-79:7; 80:10-19;168:¶ 4.) The horse was impounded on February 16.  (Aplee. Supp. App. at 538:¶10; 168:5) Other than acting as a

witness in the animal cruelty case, Dr. Olds' material involvement in the case ended on February 16.

**Plaintiffs' Horse Operation at Echo Valley Ranch**. Plaintiff Swift lives and works on property known as Echo Valley Ranch ("the ranch") in Park County, Colorado. (Aplee. Supp. App. at 538:¶8; 173:3-15; 174:10-175:10.) Plaintiff Hatlee works with Swift at the ranch. (Aplee. Supp. App. at 538:¶9; 212:20-213:13.) They each owned several horses at the ranch; they each owned three of the six horses involved in the underlying case. (Aplee. Supp. App. at 539:¶11; 193:5-194:3; 195:21-196:18; 226:18-227:8; 228:11-12; 247:12-13; 270-271 (authenticated at 114:10-118:12; 152:3-153:25).) They also boarded horses owned by others, gave riding lessons, and trained horses at the ranch. (Aplee. Supp. App. at 212:20-213:3.)

**Horses Involved in Routt County Animal Cruelty Case**. In early 2012, two of the horses under Plaintiffs' care at the ranch were Little Feather and her colt, Bear.[4] Those horses were the subject of an animal abuse case in Routt County against Plaintiff Hatlee's ex-wife. (Aplee. Supp. App. at 214:9-11; 217:6-18; 268 (authenticated at 114:10-118:12; 152:3-153:25).) Although Plaintiffs cared for the horses, they remained under the jurisdiction of Routt County. (Aplee. Supp. App. at 541:¶18; 218:17-219:12.)

---

[4] Bear was sometimes referred to by other names: Little Bear, Little Big Man, and Spencer.

On February 13, 2012, two deputies from the Routt County Sheriff's Office went to Echo Valley Ranch to conduct a welfare check on Little Feather and Bear. (Aplee. Supp. App. at 214:9-11; 217:6-18; 243:13-25; 268.) They learned that Little Feather had died the previous month, and they observed Bear in "deplorable" condition. (Aplee. Supp. App. at 541:¶20; 542: ¶21; 220:5-21; 268.) A photo of Bear taken on February 13, 2012, is Attachment A. (Aplee. Supp. App. at 525.) The Routt County deputies observed six other horses at the ranch in similar condition. (Aplee. Supp. App. at 542:¶22; 268.) These six horses were named Lena, Chance, Echo, Fiona, River and Midnight ("The Six Horses".) (Aplee. Supp. App. at 539:¶11; 193:5-194:3; 195:21-196:18; 226:18-227:8; 228:11-12; 247:12-13; 268, 270-271.) The misdemeanor charges eventually filed against Plaintiffs involved The Six Horses and Bear. (Aplee. Supp. App. at 127:16-128:16.)

As a result of the February 13, 2012, welfare check, the Routt County deputies ordered the seizure of Bear (which was a subject of the Routt County case), and they reported the condition of The Six Horses to the Park County Sheriff's Office (which had jurisdiction because the horses were in Park County.) (Aplee. Supp. App. at 542:¶23; 80:10-19; 268-269.) The Routt County officers asked Park County officers to assist by seizing Bear on behalf of Routt County. (Id.)

**February 16, 2012, Visit to Echo Valley Ranch by Dr. Olds and Park County Officers**. Dr. Olds' involvement began on February 15, 2012, when she was asked if her hospital would be willing to care for a horse that Routt County was planning to seize. (Aplee. Supp. App. at 537:¶7, 542:¶24; 75:7-79:7; 80:10-19; 168: ¶ 4.) The horse was Bear.  The Routt County deputy expressed concern to Dr. Olds that the horse was in very poor shape and may need significant medical care. (Aplee. Supp. App. at 79:1-7) Dr. Olds was asked if she would bring a horse trailer the next morning, accompany the Park County officers who were seizing the horse on Routt County's behalf, and transport the horse from the scene to her hospital. (Aplee. Supp. App. at 542:¶25; 75:7-79:7.) Dr. Olds agreed. On the morning of February 16, 2012, Dr. Olds and her vet assistant, Troy Murdock, met Park County officers in Bailey, Colorado, and the group left to get the horse. (Aplee. Supp. App. at 543:¶26; 67:6-10; 75:7-79:7.) Dr. Olds learned at that point that the horse was being seized from Echo Valley Ranch. (Id.)

February 16, 2012, was Dr. Olds' only visit to Echo Valley Ranch. (Aplee. Supp. App. at 538: ¶10; 168:¶ 5.) Two Park County deputies went to the ranch to serve the Routt County warrant for seizure of Bear. (Aplee. Supp. App. at 543:¶27; 93:23-94:18; 269.) Dr. Olds and her vet assistant accompanied the Park County deputies to take possession of Bear after his seizure. (Aplee. Supp. App. at 543: ¶28; 77:24-79:22; 93:23-94:18; 352:10-353:11; 354:7-16.) Park County Animal

7

Control Officer Cindy Hardey also went to the ranch to do a welfare check on The

Six Horses whose poor condition Routt County had reported to Park County three

days earlier. (Aplee. Supp. App. at 543:¶29; 93:6-94:8; 268-269.)

When Dr. Olds and the Park County officers arrived at the ranch, they found

Bear down in his stall, extremely thin, covered in urine and manure, and unable to

stand on his own. (Aplee. Supp. App. at 544: ¶30; 129:20-131:6; 269; 354:21-

355:4; 414 (authenticated at 124:5-20).) A photo of Bear taken on February 16,

2012, is in Attachment B. (Aplle. Supp. App. at 371.) Plaintiffs concede that Bear

was too thin and had difficulty getting up on his own. (Aplee. Supp. App. at

540:¶13, 544:¶32; 176:2-10; 177:9-15; 178:5-7; 179:2; 180:15-18; 182:7-22;

206:2-14; 221:19-222:5; 228:11-12; 244:16-25.) To Officer Hardey, Bear appeared

emaciated, and she believed his small size was likely the result of malnutrition.

(Aplee. Supp. App. at 131:22-132:3; 132:24-133:6.)

Dr. Olds and Officer Hardey next saw an emaciated, down, sore-covered

mare named Maggie. (Aplee. Supp. App. at 545:¶33; 73:21-74:3; 95:10-96:17;

97:10-98:5; 133:7-135:10; 269-270; 414-415.) Two photos of Maggie taken on

February 16, 2012, are in Attachment C. (Aplee. Supp. App. at 358, 360.) Maggie,

who had been unable to stand on her own for about five days, died the next day.

(Aplee. Supp. App. at 545:¶35; 83:9-10; 275; 455:20-25; 545:¶34; 133:7-134:4;

187:21-191:13; 215:1-12; 414; 453:22-454:13; 473-474 (authenticated at 451:22-

452:15).) Plaintiff Swift told Dr. Olds that several other horses at the ranch had already died in recent months. (Aplee. Supp. App. at 70:20-25.)

Officer Hardey, Dr. Olds, and her vet assistant then looked at The Six Horses. (Aplee. Supp. App. at 546:¶36; 87:6-10; 95:10-96:17; 97:10-98:5; 136:13-20; 137:6-138:22; 270-271; 356:1-19; 415.) Dr. Olds saw The Six Horses in dirty pens, with empty food bins, and empty or frozen-over water buckets. (Id.) She saw the horses were severely emaciated. (Aplee. Supp. App. at 87:6-10). Her vet assistant saw their water troughs were frozen over. (Aplee. Supp. App. at 356:1-19.) Plaintiff Swift admitted the water troughs needed to be filled. (Aplee. Supp. App. at 547:¶42; 209:5-18.) Plaintiff Hatlee admitted some water troughs were covered with ice. (Aplee. Supp. App. at 547:¶42; 246:9-12.) A Park County deputy observed that six of the eight water troughs were frozen and the horses could not drink. (Aplee. Supp. App. at 286) Photos taken on February 16, 2012, of several of the The Six Horses are in Attachment D. (Aplle. Supp. App. at 407, 528, 529, 379, 383, 408.)

It is undisputed that Maggie, Bear, and The Six Horses were too skinny on February 16, 2012. (Aplee. Supp. App. at 540:¶13-541:16; 544:¶30-545:¶33; 546:¶36-37; 547:¶41; 70:9-12; 72:4-5; 73:21-74:3; 87:6-10; 95:10-96:17; 96:24-98:5; 129:20-132:3; 132:24-135:8; 136:13-20; 137:6-138:22; 168:¶ 6, 176:2-10; 177:3-15; 180:15-18; 182:8-16; 184:18-19; 192:22-193:14; 194:3-8; 195:17-24;

196:5-18; 197:9-22; 206:2-9; 215:1-12; 224:7-16; 227:6-8; 228:11-12; 231:9-10;

233:7-234:5; 236:15-17; 238:17-19; 240:11-16; 241:9-18; 247:6-13; 255:19-23;

256:17-22; 269 ("Maggie was skinny"); 270 (Lena and Midnight were "very

emaciated"); 271 (Fiona, Echo, River, Chance were "very emaciated"); 286 ("the

baby [Bear] looked very skinny"; horse upstairs [Maggie] appeared "very skinny";

"located outside by the barn were at lease [sic] six other horses that appeared to be

skinny"); 354:21-355:4; 356:1-19; photos at 358-411; (photos authenticated at

223:6-16; 225:3-6; 229:3-7; 230:10-14; 239:21-24; 242:23-25; 168:¶ 9; 269, 286-

287); 414-415 (authenticated at 168:¶ 10).)

Based on her observations at the ranch on February 16, 2012, Dr. Olds

suspected that Bear, Maggie, and The Six Horses were victims of starvation and

malnutrition. (Aplee. Supp. App. at 548:¶44; 169:¶ 11; 414-415.) She reported her

suspicions to Officer Hardey at the scene and discussed with her the potential

seizure of these horses along with Bear. (Aplee. Supp. App. at 549:¶46-550: ¶49;

65:16-66:10; 69:12-20; 97:21-98:5; 122:5-123:13; 271.) Although disputed, some

witnesses suggest that Dr. Olds "demanded" that all of the horses be seized.

Regardless, it is undisputed that Officer Hardey decided not to seize The Six

Horses on February 16, 2012. (Aplee. Supp. App. at 551:¶52; 96:11-17; 99:19-

101:1; 102:9-13; 140:2-4; 149:25-150:4; 271-272.)

Instead, Officer Hardey issued a Notice of Warning to Plaintiffs. (Id.) The notice told Plaintiffs they had one month to "rectify the condition of the animals" or else they may be charged. (Aplee. Supp. App. at 458.) Officer Hardey decided to issue the warning, instead of seizing the horses, based in part on her understanding that Maggie and the Six Horses were under the care of Plaintiffs' regular veterinarian, Dr. Horton of Timberline Equine Veterinary Services ("Timberline"). (Aplee. Supp. App. at 96:11-17; 119:13-120:3; 103:1-24; 124:2-4; 271-272.) This understanding came from statements by Plaintiffs. While Officer Hardey was at the ranch on February 16, 2012, Plaintiff Swift spoke by phone with Officer Hardey's supervisor, Sergeant Priestly; Plaintiff Swift told Priestly The Six Horses and Maggie were under veterinary care. (Aplee. Supp. App. at 147:10-23.) Plaintiff Hatlee told Officer Hardey that he and Swift were working with Timberline and taking steps they were advised to take in regard to all of the sick horses. (Aplee. Supp. App. at 248:1-4.) Officer Hardey's impression that Maggie and The Six Horses were under the care of Timberline was a factor in her decision to issue a Notice of Warning instead of seizing them. (Aplee. Supp. App. at 119:18-120:6.)

However, Officer Hardey later learned The Six Horses were *not* receiving veterinary treatment from Timberline as of February 16, 2012. (Aplee. Supp. App. at 272 ("I also received an email from Dr. Horton…"); 429:21-431:2; 418:2-

421:25; 455:20-456:3; 481:6-22.) Although Timberline had provided veterinarian services to Plaintiffs at various times in the past, Timberline did not have a veterinarian-client-patient relationship with any of The Six Horses as of February 16, 2012. (Aplee. Supp. App. at 560:¶72, 75; 418:2-421:25; 429:21-431:2, 449:4-10; 480:20-24.) Before that date, the last time Timberline had treated any of The Six Horses was:

- Fiona, never;

- Lena, never;

- Echo, August 2010;

- Midnight, September 2010;

- River, October 2010;

- Chance, October 2010.

(Aplee. Supp. App. at 559:¶73-74; 418:2-421:25; 455:20-456:3; 481:6-22.) Timberline had treated Maggie on February 11 and 13, 2012, but none of the other horses. (Aplee. Supp. App. at 272-274; 473-474)

Dr. Olds' visit to the ranch ended when she and her assistant loaded Bear into the trailer and left for her hospital.[5] (Aplee. Supp. App. at 553:¶57; 96:11-12;

---

[5] After Bear was nursed back to health, he was adopted by a third party. (Aplee. Supp. App. at 568:¶101; 85:20-86:13.) Because Plaintiffs did not own Bear, and because the seizure was ordered by Routt County rather than Park County, the seizure of Bear is not a part of Plaintiffs' improper seizure claim in this case. (Aplt. App. 31:¶34.)

169:¶ 12.) Dr. Olds knew at that time that Park County did not plan to seize The Six Horses that day. (Aplee. Supp. App. at 553:¶58 Ex A, at 68:24-69:11.)

When Bear arrived at Dr. Olds' hospital, the horse could not stand and had to be carried out of the trailer. (Aplee. Supp. App. at 466:13-23; 468:19-22.) [6] Dr. Olds wrote an email to Officer Hardey memorializing her observations that day. (Aplee. Supp. App. at 557: ¶65; 68:10-23; 71:3-6; 129:6-11; 168:¶ 10; 413-415.)

**Moving The Six Horses to Another Location**. In the days after February 16, 2012, the Park County Sheriff's Department was inundated with telephone calls from people upset over the situation with the horses. Undersheriff Gore became concerned over talk about an attempt to rescue the horses. (Aplee. Supp. App. at 557:¶66; 159:16-161:14; 276.) He suggested moving the horses to an undisclosed location to defuse the situation. (Id.) On February 19, 2012, Plaintiffs agreed to move The Six Horses to another location, and Plaintiffs and Park County signed a written agreement in this regard. (Aplee. Supp. App. at 557:¶67; 103:10-22; 199:22-200:12; 201:16-17; 296:12-16; 250:4-252:13; 476 (authenticated at 103:10-16).) The Six Horses were transported from the ranch to the temporary custody of a third party. (Aplee. Supp. App. at 104:3-10.)

---

[6] Bear quickly recovered at Dr. Olds' hospital. (Aplee. Supp. App. at 169:¶19.) He was soon able to stand on his own and displayed a healthy appetite. (Aplee. Supp. App. at 413; 466:13-23.)

Dr. Olds played no role in the February 19 agreement to move The Six Horses from the ranch, or in moving them. (Aplee. Supp. App. at 558:¶69; 81:14-21; 84:13-20; 204:16-205:12.)

**Officer Hardey Decided to File Charges Against Plaintiffs**. Officer Hardey continued her investigation after the horses were moved on February 19, 2012. (Aplee. Supp. App. at 558:¶70; 276-277.) On February 22, 2012, she spoke to Plaintiffs' veterinarian, Dr. Horton of Timberline. (Aplee. Supp. App. at 558:¶71; 124:21-125:5; 276, 296-298.) Dr. Horton had seen The Six Horses on February 20, 2012, after they were moved from the ranch. (Aplee. Supp. App. at 561:¶76; 422:15-426:6; 435:20-436:7; 444:7-446:23.) Dr. Horton found the horses to be extremely thin and grossly anemic. (Aplee. Supp. App. at 561:¶77-78; Ex O, at 422:15-426:6; 435:20-436:7; 438:8-15; 439:4-440:2; 444:7-446:23.) Dr. Horton reported her observations and thoughts to Officer Hardey in the phone call on February 22, 2012. (Aplee. Supp. App. at 296-298.)

Importantly, Dr. Horton also told Officer Hardey that Plaintiffs should have sought assistance for The Six Horses sooner. (Aplee. Supp. App. at 562:¶79-81; 124:21-125:14; 276, 296, 298; 447:21-24.) Dr. Horton told Officer Hardey, "My professional opinion is that, um, regardless of what's causing those horses to be thin, um, someone should have noticed and sought assistance for them." (Aplee. Supp. App. at 296; 447:21-24.) Dr. Horton also told Officer Hardey, "sadly that's

14

the bottom line truth. Those horses were let go to far to long [sic]." (Aplee. Supp. App. at 298; 443:1-6.) At her deposition in this lawsuit, Dr. Horton reiterated that the "horses would have benefitted from intensive attempts to correct their weight loss sooner, either through medical attention or extra feed or at least investigation." (Aplee. Supp. App. at 432:4-7.) Dr. Horton believed "the horses had deteriorated past a point where assistance should have been sought" and that they would have "benefitted from veterinary intervention much sooner." (Aplee. Supp. App. at 432:18-20; 112:24-25.) That was her opinion in 2012, and is still her opinion today. (Aplee. Supp. App. at 113:7-11.)

After talking with Dr. Horton on February 22, 2012, Officer Hardey decided to charge Plaintiffs with animal cruelty and to seize The Six Horses (Aplee. Supp. App. at 564:¶85; 125:6-126:21; 276 (last paragraph).) She based this decision on all of her investigation, including the opinion by Dr. Horton that Plaintiffs had let the horses go far too long without seeking medical attention. (Aplee. Supp. App. at 565:¶86; 125:6-126:21; 139:8-140:4; 154:5-155:5; 276 (last paragraph).)

**Dr. Olds Was Not Involved in The Decision to Seize The Six Horses and File Charges**. On February 22, 2012, a warrant was issued by Park County to seize The Six Horses. The warrant was supported by an affidavit from Officer Hardey. (Aplee. Supp. App. at 484-485.) Around the same time, Officer Hardey served Plaintiffs with a summons and complaint charging each of them with three counts

15

of misdemeanor animal cruelty.[7] (Aplee. Supp. App. at 487-488.) The original

charges issued by Officer Hardey concerned only The Six Horses. (Aplee. Supp.

App. at 127:8-23; 487-488.) She later added a similar charge relating to Bear.

(Aplee. Supp. App. at 127:16-128:6.)

Dr. Olds played no part in the drafting, reviewing, or approval of the Park

County Sheriff's seizure application, the supporting affidavit, or the summonses

and complaints. (Aplee. Supp. App. at 567:¶92-93; 109:17-110:19; 169:¶13-14.)

Dr. Olds played no role in Park County's seizure of The Six Horses. (Aplee. Supp.

App. at 567:¶94; 111:20-112:6; 151:13-20; 169:¶15; 277-278.) Dr. Olds sent an

email to Undersheriff Gore offering to temporarily house The Six Horses *if they*

*were seized* ("If you do end up getting permission for surrender, please let us know

ASAP and we can start getting accommodations ready."). (Aplt. App. 144.) Park

County never pursued the offer; The Six Horses were never taken to Dr. Olds'

hospital; and she played no role in their assessment or care after the seizure.

(Aplee. Supp. App. at 567:¶95-96; 169:¶ 16-17; 83:13-19.)

Dr. Olds in good faith suspected, and continues to suspect, that Plaintiffs had

starved and/or neglected Bear and The Six Horses. (Aplee. Supp. App. at 568:¶97;

169:¶ 18.) Indeed, soon after arriving at Dr. Olds' hospital, Bear displayed a

voracious appetite and quickly put on weight, in response to treatment that largely

---

[7] There was one count for each of The Six Horses. Plaintiff Swift owned three of
them, Plaintiff Hatlee owned the other three.

consisted of basic feed and water. (Aplee. Supp. App. at 556:¶63; 169:¶ 19.) While

Dr. Olds agreed with the Park County Sheriff's decision to seize the horses and

charge Plaintiffs, Dr. Olds' role was limited to that of a witness. Plaintiffs allege

that Dr. Olds expressed her opinions as part of the so-called "public outcry" (which

is disputed), but there is no evidence she took any action whatsoever under color of

state law.

**Judge Found Probable Cause for the Charges**. On April 10, 2012, at a

motions hearing in the criminal matter against Plaintiffs, the judge found there was

no probable cause to issue a warrant to seize The Six Horses because they were not

in imminent danger as of February 22, 2012. (Aplee. Supp. App. at 512:25-513:4.)

The judge did find, however, there was probable cause to believe The Six Horses

had been subject to animal cruelty: "The Court does find that the officer [Hardey]

had probable cause to believe that the animals suffered from animal cruelty…."

(Aplee. Supp. App. at 512:22-24.) At a later hearing, the judge reiterated there was

probable cause to believe that Plaintiffs had committed the crime of animal cruelty:

"I still believe there was probable cause to suspect the defendants committed the

act of animal cruelty." (Aplee. Supp. App. at 515:24-516:1.)

**Prosecutor Believed There Was Sufficient Evidence of Animal Cruelty**

**to Bring Charges**. The animal cruelty charges against Plaintiffs were tried to a

jury, who found them not guilty. The case was prosecuted, through trial, by District

17

Attorney LeDoux. (Aplee. Supp. App. at 518:¶7-12.) Mr. LeDoux reached his own

independent professional opinion, as the duly-elected District Attorney, "that there

was sufficient evidence of animal cruelty/neglect that there was a reasonable

likelihood of conviction." (Aplee. Supp. App. at 518:¶8.)

## SUMMARY OF ARGUMENT

The District Court properly granted Dr. Olds summary judgment on

Plaintiffs' 42 U.S.C. §1983 claims because Dr. Olds did not act under color of state

law. Dr. Olds' compliance with Colorado's animal abuse reporting statue and her

general agreement with Park County's decision to prosecute does not convert

Dr. Olds into a state actor for purposes of §1983 liability. Even assuming that

Dr. Olds acted under color of state law, summary judgment on the §1983 claims

was appropriate because Dr. Olds has qualified immunity based on the undisputed

existence of probable cause. Finally, summary judgment on the §1983 claims was

appropriate because Dr. Olds played no role in the drafting of the seizure affidavit

or the decision to prosecute Plaintiffs.

The District Court also properly granted summary judgment on the state-law

malicious prosecution claim because Dr. Olds has immunity under state law and

because of the undisputed existence of probable cause.

## ARGUMENT

**I.      Standard of Review.**

A grant of summary judgment is reviewed de novo. *Cliffs Synfuel Corp. v. Norton*, 291 F.3d 1250, 1257 (10th Cir. 2002). Such review is conducted "from the perspective of the district court at the time it made its ruling, ordinarily limiting [the] review to the materials adequately brought to the attention of the district court by the parties." *Adler v. Wal-Mart Stores*, 144 F.3d 664, 671 (10th Cir. 1998).

Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or is so one–sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986); *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1136 (10th Cir. 2000). Once the moving party meets its initial burden of demonstrating an absence of a genuine dispute of material fact, the burden then shifts to the non-moving party to move beyond the pleadings and to designate evidence which demonstrates the existence of a genuine dispute of material fact to be resolved at trial. *1-800-Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1242 (10th Cir. 2013). A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable jury could return a verdict for either party. *Anderson*, 477 U.S. at 248. In considering whether summary judgment is appropriate, the facts must be considered in a light most favorable to the non-moving party. *Cillo v. City of Greenwood Vill.*, 739 F.3d 451, 461 (10th Cir. 2013).

However, "[t]he mere existence of a scintilla of evidence in support of the nonmovant's position is insufficient to create a dispute of fact that is 'genuine'; an issue of material fact is genuine only if the nonmovant presents facts such that a reasonable jury could find in favor of the nonmovant." *Lawmaster v. Ward*, 125 F.3d 1341, 1347 (10th Cir. 1997) (quoting *Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996)).

If the movant properly supports a motion for summary judgment, the opposing party may not rest on the allegations contained in her complaint, but must respond with specific facts showing a genuine factual issue for trial. Fed. R. Civ. P. 56(e); *Anderson,* 477 U. S. at 247–48 (holding that "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact" (emphasis in original)). Only admissible evidence may be considered when ruling on a motion for summary judgment. *Jaramillo v. Colo. Judicial Dep't*, 427 F.3d 1303, 1314 (10th Cir. 2005) (holding that hearsay evidence is not acceptable in opposing a summary judgment motion); *World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985). Affidavits must be based on personal knowledge and must set forth facts that would be admissible evidence at trial. *Murray v. City of Sapulpa*, 45 F.3d 1417, 1422 (10th Cir. 1995). "Conclusory and self-serving affidavits are not sufficient."

*Id.* The court will not consider statements of fact, or rebuttals thereto, which are not material or are not supported by competent evidence. Fed. R. Civ. P. 56(c)(1)(A), (e)(2)-(3). "[O]n a motion for summary judgment, it is the responding party's burden to ensure that the factual dispute is portrayed with particularity, without depending on the trial court to conduct its own search of the record." *Cross v. Home Depot*, 390 F.3d 1283, 1290 (10th Cir. 2004) (internal quotation and citation omitted). The court is "not obligated to comb the record in order to make [Plaintiffs'] arguments for [them]." *Mitchell v. City of Moore*, 218 F.3d 1190, 1199 (10th Cir. 2000).

This court may affirm the district court on any basis the record supports, even one the district court did not reach. *Citizen Potawatomi Nation v. Norton*, 248 F.3d 993, 1001 (10th Cir. 2001).

## II.  The District Court Properly Granted Summary Judgment on the 42 U.S.C. § 1983 Claims Because Dr. Olds Did Not Act Under Color of State Law.

Plaintiffs' first claim against Dr. Olds is based on 42 U.S.C. §1983, alleging improper seizure of The Six Horses. (Aplee. Supp. App. at 14-15.) Plaintiffs' second claim against Dr. Olds is based on 42 U.S.C. §1983, alleging malicious prosecution. (Aplee. Supp. App. at 15-16.) But Dr. Olds did not seize The Six Horses, and Dr. Olds did not prosecute Plaintiffs for animal cruelty. Dr. Olds was merely a witness, and she was never affiliated with the Park County Sheriff's

Office in any way. Because Dr. Olds did not act under color of state law, she was properly granted summary judgment on the §1983 claims.

> ### A. Case Law Interpreting § 1983's "Under Color of State Law" Requirement Supports the District Court's Decision.

To state a cause of action under 42 U.S.C. § 1983, the challenged conduct must constitute state action. *Scott v. Hern*, 216 F.3d 897, 906 (10th Cir. 2000) (citing *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 930-32 (1982)). A claim under § 1983 requires deprivation of a constitutional right committed under color of state law. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999); *Guinn v. Farmers Ins. Co.*, 563 F. App'x 653, 654 (10th Cir. 2014); *Lay v. Otto*, 530 F. App'x 800, 802 (10th Cir. 2013) (holding the "under color of state law" element is a jurisdictional requisite for a § 1983 claim). "[T]he under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *Am. Mfrs.*, 526 U.S. at 50 (internal quotations omitted). "[S]tate action requires *both* an alleged constitutional deprivation . . . *and* that the party charged must be a person who may fairly be said to be a state actor." *Id.* (internal quotation marks omitted) (emphasis in original). "The only proper defendants in a Section 1983 claim are those who represent the state in some capacity." *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1447 (10th Cir. 1995); *see also Kirby v. Dallas Cnty. Adult Prob. Dep't*, 359 F. App'x 27, 35 (10th Cir. 2009).

22

Citizens who make complaints to police officers that result in arrests are not state actors. *Gallagher*, 49 F.3d at 1454. Stated differently, "the mere furnishing of information to police officers who take action thereon does not constitute joint action under color of state law which renders a private actor liable under § 1983." *Lee v. Town of Estes Park*, 820 F.2d 1112, 1115 (10th Cir. 1987) (citing *Benavidez v. Gunnell*, 722 F.2d 615, 618 (10th Cir. 1983) ("[W]e know of no case in which the report of a state crime is action under color of state law under § 1983.")).

When a private party gives testimony in open court in a criminal trial, that act is not performed "under color of law," and all witnesses are absolutely immune from civil liability based on their testimony in judicial proceedings. *Briscoe v. LaHue*, 460 U.S. 325, 326, 328-30 (1983); *Worrell v. Henry*, 219 F.3d 1197, 1204 (10th Cir. 2000).

A private citizen does not engage in state action simply by availing herself of a state procedure. *Scott*, 216 F.3d at 906.  The mere fact an individual is subject to state regulation does not convert her action into that of the state for purposes of the Fourteenth Amendment. *Gallagher*, 49 F.3d at 1447; *Kirby*, 359 F. App'x at 35; *Am. Mfrs.*, 526 U.S. at 52. Use of a state procedure does not become state action simply because the person using the procedure is a licensed professional. *Scott*, 216 F.3d at 906-07.  Along these lines, many federal courts have determined that state mandatory reporting statutes <u>do not</u> turn the mandatory reporter into a

state actor for purposes of § 1983. *See Brown v. Newberger*, 291 F.3d 89, 93 (1st Cir. 2002) (statutory reporting requirement does not create the kind of regulatory nexus that justifies treating reporter as a state actor); *Preston v. New York*, 223 F. Supp. 2d 452, 465 (S.D.N.Y. 2002) (statutory obligation to preserve evidence and report suspected abuse insufficient to impose § 1983 liability on a private entity); *Thomas v. Beth Israel Hosp., Inc.*, 710 F. Supp.  935, 940-41 (S.D. N.Y. 1989) (compliance with state law by reporting suspected abuse does not mean reporter acted under color of state law); *Schneider v. Sutter Amador Hosp.*, No. 2:14-cv-00804 GEB AC PS, 2014 U.S. Dist. LEXIS 152869, at *18 (E.D. Cal. Oct. 28, 2014) ("[T]he doctors' compliance with state reporting requirements does not make them state actors."); *Amor v. Arizona*, No. CIV 06-499-TUC-CKJ, 2009 U.S. Dist. LEXIS 19606, at *7-11 (D. Ariz. Feb. 27, 2009) (private doctor failed to come within color of state law despite mandatory reporter statute); *Haag v. Cuyahoga County*, 619 F. Supp. 262, 283 (N.D. Ohio 1985) (individual not state actor despite mandatory reporting law); *Arline v. City of Jacksonville*, 359 F. Supp. 2d 1300, 1312 (M.D. Fla. 2005) (private doctor's alerting authorities of suspected child abuse per state statute and providing information that may lead to an arrest is not sufficient to convert a private person's actions into public action); *Murphy v. Parker*, No. CV 05-3468-PCT-DGC (MEA), 2006 U.S. Dist. LEXIS 50141, at * 7 (D. Ariz. July 19, 2006) (a private person who makes representations to an official,

even in a report required by law, is not acting under color of state law within the

meaning of the civil rights statutes); *Boyko v. Parkview Hospital, Inc.*, No. 1:10

CV 260, 2012 U.S. Dist. LEXIS 114384, at * 10 (N.D. Ind. Aug. 14, 2012) (fact

that private actor is required to follow the laws of a state does not mean the actor

functions as the state by complying); *Tomberlin v. Clark*, No. 2:13-cv-01111-LSC,

2015 U.S. Dist. LEXIS 105784, at *29-31 (N.D. Ala. Aug. 12, 2015) (licensed

social worker who was required to report child abuse to county department of

human resources, and did so, not state actor); *Hohmann v. Hobble*, No. 1:15-CV-

1240, 2016 U.S. Dist. LEXIS 5684, at *8-9 (M.D. Pa. Jan. 19, 2016) (dismissing §

1983 claim against defendant who allegedly filed false report of child abuse with

police because court "could not conceive of any circumstance under which

[defendant], as a private citizen and concerned father, might be deemed a state

actor").

The *Brown* decision is directly on point. In *Brown*, the plaintiff sued a social

worker for reporting suspected abuse under the state's mandatory reporting law.

291 F.3d at 93. The 1st Circuit ruled that the social worker was <u>not</u> acting under

color of state law despite the state's mandatory reporting statute:

> Defendant Kern's liability as a state actor is pressed on the basis that
> she filed a report of suspected sexual abuse with DSS [Department of
> Social Services]. Mass. Gen. Laws ch 119, § 51A requires a wide
> variety of social and health workers to file such reports if they have
> reasonable cause to believe that a child is suffering from sexual
> abuse…. While this kind of "mandatory reporting" goes somewhat

beyond the cases dealing with the voluntary furnishing of information to the police, . . . we conclude that the reporting requirement under section 51A does not create the kind of regulatory nexus that could justify treating Kern as a state actor.

*Id.* (internal citations omitted). As the court summed up:

Nothing seems more counterintuitive to us than to reason that a statute which protects one who complies from civil or criminal actions under state law should be the vehicle for subjecting the actor to liability under federal law.

*Id.*

Plaintiffs claim that Dr. Olds qualifies as a state actor under the so-called "joint action" or "conspiracy" tests, but these doctrines do not apply here. Under both doctrines, "the conduct allegedly causing the 'deprivation of a federal right' must be 'fairly attributable to the state.'" *Gallagher*, 49 F.3d at 1447 (quoting *Lugar*, 457 U.S. at 937). Citizens who merely make complaints to police officers that result in arrests are not state actors. *Id.* at 1454. For the joint action or conspiracy tests to apply, the allegedly unconstitutional act must have resulted from a concerted action such as a conspiracy, prearranged plan, or policy that substituted the judgment of a private party for that of the police. *Id.* Such joint action or conspiracy is not present when the police make an independent decision to make the challenged arrest. *Id.* The joint action doctrine applies only where the defendant pursued a constitutional violation with the assistance of, or in conspiracy with, state officials, and cases invoking this doctrine involve factual situations far

26

different from that of a mere complaining and advocating witness. *See Lugar*, 457

U.S. 922 (creditor seizing for himself a debtor's property with the assistance of a

sheriff); *Adickes v. S. H. Kress & Co.*, 398 U.S. 144 (1970) (lunch counter manager

refused service on racial grounds at the direction of local police); *Dennis v Sparks*,

499 U.S. 24 (1980) (alleged bribing of a judge); *Tower v. Glover*, 467 U.S. 914

(1984) (alleged bribing of a public defender).

### B.    Dr. Olds Did Not Act Under Color of State Law.

Under the authorities outlined above, it is beyond dispute that Dr. Olds did

not act under color of state law when she reported her suspicions of animal cruelty

and advocated for the seizure of The Six Horses. Dr. Olds' went to Echo Valley

Ranch to assist in the seizure of Bear pursuant to a <u>Routt County</u> seizure warrant,

and <u>this seizure of Bear is not at issue in this case.</u> Park County Deputies served

Plaintiffs with the Routt County seizure warrant for Bear on February 16, 2012,

and Officer Hardey later served Plaintiffs with the Park County seizure warrant,

summonses, and complaints for The Six Horses. There is no evidence that Dr. Olds

performed any law enforcement or prosecutorial actions at any time.

Dr. Olds' role with respect to Park County's investigation of The Six Horses

was merely that of a <u>witness</u>. Dr. Olds witnessed evidence of suspected animal

cruelty and reported it to the Park County Sheriff's Office. Reporting her

suspicions of animal cruelty, and thus complying with Colorado's reporting statute,

did not convert Dr. Olds into a state actor or constitute joint action under color of state law. Even assuming Dr. Olds was part of the "public outcry" (despite Plaintiffs' thin evidentiary support connecting Dr. Olds to it), there is no evidence that this exercise of Dr. Olds' First Amendment rights was performed as a state actor. Likewise, Dr. Olds' later role as a witness in the criminal trial did not convert Dr. Olds into a state actor or constitute joint action.

Furthermore, it is undisputed that the Park County Sheriff's Office <u>did not</u> seize The Six Horses or file charges against Plaintiffs at Dr. Olds' urging on February 16, 2012. Instead, Officer Hardey merely served Plaintiffs with a Notice of Warning, allowing The Six Horses to stay at the ranch. It was not until several days later, after Officer Hardey conducted further investigation and obtained additional information (most notably from Dr. Horton in the February 22, 2012, phone call) that the Park County Sheriff charged Plaintiffs and seized The Six Horses.

It is beyond dispute that Dr. Olds did not obtain the seizure warrant for The Six Horses; the Park County Sheriff's Office did. Likewise, Dr. Olds did not charge Plaintiffs with animal cruelty; the Park County Sheriff's Office did. Dr. Olds did not pursue the criminal prosecution of Plaintiffs; the District Attorney's Office did. Dr. Olds did not prepare, review, or approve the arrest warrants, the seizure warrant, the seizure affidavit, or the charges. While Dr. Olds advocated for

the seizure and testified at the criminal trial, she played no role in the seizure or the prosecution. There is simply no evidence that Dr. Olds participated in the seizure, the bringing of charges, or the pursuit of the criminal prosecution against Plaintiffs. She did not act under color of state law.

<u>Plaintiffs' opening appellate brief ignores, and thus does not appeal, the bulk of the District Court's ruling that Dr. Olds did not act under color of state law.</u> Plaintiffs' opening appellate brief discusses only one aspect of the District Court's legal ruling on the § 1983 claims. (Opening Brief, at 24.) That is the portion of the District Court's Order that begins:

> Even if this Court were to accept Plaintiffs' dubious contention that Dr. Olds was responsible for creating a "public outcry" . . . and that the Park County Defendants reacted to that "public outcry" by seizing the Six Horses and having Plaintiffs prosecuted, this fact pattern still would not trigger liability under the joint action doctrine.

(Aplee. Supp. App. at 589.) The opening brief wholly ignores the previous five pages of the District Court's Order, which provides multiple alternate bases for concluding that Dr. Olds did not act under color of state law. (Aplee. Supp. App. at Aplt. App. 583-588.) These pages of the District Court Order list the many undisputed facts that support the District Court's ruling. Plaintiffs do not address these grounds for granting summary judgment.

Specifically, the District Court ruled, and Plaintiffs have not appealed, the following:

- Dr. Olds' provision of her oral and written report to Park County officials did not constitute action under color of state law for purposes of § 1983. (Aplee. Supp. App. at 585.)

- Plaintiffs' argument that Dr. Olds' diagnosis fell below a reasonable standard of care does nothing to show that Dr. Olds was acting under color of state law. (Aplee. Supp. App. at 586.)

- Plaintiffs' contention that Dr. Olds created a "public outcry" would not constitute action under color of state law. (Id.)

- Even assuming that Dr. Olds encouraged other members of the public to speak out against Plaintiffs, such action would amount to no more than private conduct that is not actionable under § 1983. (Id.)

- A joint action claim under § 1983 will not lie where the record indicates the police made an independent decision to make the challenged arrest. (Aplee. Supp. App. at 587.)

- The record does not contain sufficient evidence to create a material issue of fact as to whether any of the Park County Defendants were influenced by Dr. Olds' actions with respect to the decision to apply for a warrant to seize the Six Horses. (Id.)

- There is not sufficient evidence to create a material issue of fact as to whether the so called "public outcry" had any influence on the decision to prosecute Plaintiffs on animal cruelty charges. (Id.)

- Plaintiffs have not pointed to any evidence that would tend to show that Dr. Olds' actions or the so called "public outcry" led to the seizure of the Six Horses. (Aplee. Supp. App. at 588.)

- Plaintiffs have presented no evidence indicating any connection between Dr. Olds' actions and the decision by District Attorney Thom LeDoux to prosecute Plaintiffs in the criminal case. (Id.)

- Mr. LeDoux made the decision to prosecute based on his own independent professional opinion that there was sufficient evidence and a reasonable likelihood of conviction. (Id.)

Because Plaintiffs have not challenged these rulings, the judgment should be affirmed. Even if Plaintiffs had appealed these rulings, the record fully supports all of the District Court's rulings, and Plaintiffs can offer no material evidence to the contrary.

Plaintiffs' lone argument on appeal regarding the District Court's determination that Dr. Olds did not act under color of state law concerns the so-called "joint action" or "conspiracy" tests. (Opening Brief at 24-27.) However, as the District Court correctly stated (Aplee. Supp. App. at 587), plaintiffs

asserting §1983 claims under a joint-action theory must show that the "private party is a 'willful participant in joint action with the State or its agents.'" *Gallagher*, 49 F.3d at 1453 (citing *Dennis*, 449 U.S. at 27). For the joint action/conspiracy test to apply, the allegedly unconstitutional act must have resulted from a concerted action, such as a conspiracy, prearranged plan, or policy that substituted the judgment of a private party for that of the police. *Id.* at 1454. A joint action claim will not lie where the police officers made an independent decision to take the challenged action. *Scott*, 216 F.3d at 907 (citing *Sooner Prods. Co. v. McBride*, 708 F.2d 510, 512 (10th Cir. 1983)).

Here, the undisputed evidence is that Officer Hardey decided to charge Plaintiffs with animal cruelty and to seize The Six Horses based on all of her investigation, including the opinion she obtained from Dr. Horton on February 22, 2012, that Plaintiffs had let the horses go far too long without seeking medical attention. Similarly, Mr. LeDoux reached his own independent professional opinion there was sufficient evidence to support the prosecution of criminal charges and a reasonable likelihood of conviction. Dr. Olds lacked the power or authority to compel the Sheriff's Office or the District Attorney to do anything. There is no evidence to suggest that Officer Hardey, Mr. LeDoux, or any other state actor conspired with Dr. Olds or substituted her judgment for their own.

As the District Court correctly concluded, summary judgment remains appropriate *even if* Dr. Olds was responsible for creating a "public outcry" and *even if* the Park County officials seized The Six Horses and prosecuted Plaintiffs in reaction thereto. (Aplee. Supp. App. at 589-590.) Even then, there is no evidence of an agreement, conspiracy, or prearranged plan that made Dr. Olds the decision-maker or the wielder of state power.[8] Because the record is devoid of evidence of any agreement, concerted action or conspiracy between Dr. Olds and the Park County Sherriff's Office, there is no joint action even assuming the Park County Sherriff's Office seized The Six Horses and prosecuted Plaintiffs in reaction to a "public outcry" allegedly instigated by Dr. Olds.

## III.   Even Assuming Dr. Olds Acted Under Color of State Law, Summary Judgment Remains Appropriate Because Dr. Olds Enjoys Qualified Immunity.

The doctrine of qualified immunity provides a separate and independent basis for affirming the judgment. *Citizen Potawatomi Nation v. Norton*, 248 F.3d 993, 1001 (10th Cir. 2001). Because the District Court determined that Dr. Olds did not act under color of state law, it did not have to address Dr. Olds' alternate argument that she is entitled to qualified immunity. ("Because the Court finds that Dr. Olds was not acting under color of state law, it need not address the issue of

---

[8] There is also no evidence to support the notion that Dr. Olds conspired to wrongly seize property or prosecute Plaintiffs, as the undisputed facts are that Dr. Olds held the good faith belief that animal cruelty was occurring.

whether Dr. Olds could assert qualified immunity.") (Aplee. Supp. App. at 590.)

Stated differently, summary judgment is appropriate under the doctrine of qualified

immunity, even if Dr. Olds had acted under color of state law.

"Qualified immunity gives government officials breathing room to make

reasonable but mistaken judgments and protects all but the plainly incompetent and

those who knowingly violate the law." *Stanton v. Sims*, __ U.S. __, __,134 S.Ct. 3,

4-5 (2013) (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). To defeat

qualified immunity at the summary judgment stage, a "plaintiff must demonstrate

on the facts alleged (1) that the defendant violated his constitutional or statutory

rights, and (2) that the constitutional right was clearly established at the time of the

alleged unlawful activity." *Swanson v. Town of Mountain View*, 577 F.3d 1196,

1199 (10th Cir. 2009). A plaintiff's failure to prove either requirement establishes

qualified immunity. *Id.* A court may address either requirement first, particularly

where, as here, a court "can more readily decide the law was not clearly

established before reaching the more difficult question of whether there has been a

constitutional violation." *Estate of Reat v. Rodriguez*, No. 15-1001, __ F.3d __,

2016 U.S. App. LEXIS 9788, at *6 (10th Cir. May 31, 2016) (citing *Pearson v.

Callahan*, 555 U.S. 223, 236 (2009)).

Putting aside whether Plaintiffs' constitutional rights were violated (they

weren't), and even assuming Dr. Olds acted under color of state law, she is

nonetheless entitled to qualified immunity from civil liability unless her actions violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Swanson*, 577 P.3d at 1199; *see also Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987); *see also Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014). Qualified immunity is determined based on an objective standard, and bare allegations of malice are insufficient. *Harlow*, 457 U.S. at 817-18. It is for the court to determine whether the right at issue was "clearly established" at the time of the defendant's alleged misconduct, but existing precedent must have placed the statutory or constitutional question beyond debate. *Pearson*, 555 U.S. at 232; *Stanton*, __ U.S. at __, 134 S.Ct. at 5; *Ashcroft*, 563 U.S. at 741.

"In the context of a qualified immunity defense on an unlawful search or arrest claim," this Court must "ascertain whether a defendant violated clearly established law by asking whether there was 'arguable probable cause' for the challenged conduct." *Stonecipher v. Valles*, 759 F.3d 1134, 1141 (10th Cir. 2014) (quotation marks omitted). If there is "arguable probable cause . . . a defendant is entitled to qualified immunity." *Kaufman v. Higgs,* 697 F.3d 1297, 1300 (10th Cir. 2012); *see also Brown v. Cole,* 568 F. App'x 600, 602 (10th Cir. 2014) ("But even

when probable cause is absent, the arresting officer enjoys qualified immunity if the existence of probable cause was at least arguable."). The same standard applies to § 1983 claims for malicious prosecution. *See Tiscareno v. Frasier*, 603 F. App'x 672, 676 (10th Cir. 2015) (citing *Wilkins v. DeReyes*, 528 F.3d 790, 799 (10th Cir. 2008)) ("On a malicious prosecution claim . . . the plaintiffs must show the absence of probable cause for [one of the plaintiff's] arrest or continued prosecution."); *Hernandez v. Story*, 459 F. App'x 697, 700 (10th Cir. 2012) (holding that defendant police officer was entitled to qualified immunity because plaintiff "failed to carry his burden of establishing that his arrest and prosecution *clearly* lacked probable cause" (emphasis added)).

Here, there is no basis to contend that "arguable probable cause" was lacking or that a reasonable person would have known that Dr. Olds' alleged actions violated clearly-established statutory or constitutional rights. At most, Plaintiffs suggest that Dr. Olds made a mistaken report of animal cruelty and then took part in a publicity effort to apply political pressure on the Park County Sheriff's Office. On two separate occasions, however, the judge presiding over the criminal case found there was probable cause to believe The Six Horses had been subject to animal cruelty. Thus, even assuming that Dr. Olds' suspicions of animal cruelty were incorrect, there is no evidence that her reporting and her alleged advocacy violated clearly-established rights of which a reasonable person would have

known. Because Plaintiffs offer no evidence that Dr. Olds violated any clearly-established law or constitutional right, qualified immunity bars their § 1983 claims.

Furthermore, Plaintiffs cannot subject Dr. Olds to § 1983 liability based on the decision to seize The Six Horses, to file the charges or to pursue the prosecution because Dr. Olds did not make those decisions. The undisputed facts establish that the Park County Sheriff's Office made the independent decision to charge Plaintiffs and seize the horses, and the District Attorney made the independent decision to pursue the prosecution. Dr. Olds lacked the power or authority to compel the Sheriff's Office or the District Attorney to do anything, and she cannot be held liable for the decisions and actions of others.

Plaintiffs misapply *Filarsky v. Delia*, __ U.S. __, 132 S.Ct. 1657 (2012) and *Wyatt v. Cole*, 504 U.S. 158, 162 (1992). In the opening brief (page 31), Plaintiffs argue that Dr. Olds cannot use qualified immunity because *Wyatt* applies and *Filarsky* does not. The argument is incorrect. In *Filarsky*, a municipality hired a private attorney to conduct an interview of a city employer suspected of missing work to do construction on his house, rather than because of illness. __ U.S. at __, 132 S.Ct. at 1660.  There was no dispute that the private attorney was acting under color of state law, and the only issue for the court was whether qualified immunity extends to part-time city workers as well as full-time workers. *Id.*, __ U.S. at __, 132 S.Ct. at 1664. The court held the doctrine applies to both categories. *Id.*, __

U.S. at __, 132 S.Ct. at 1667-68. Under *Filarsky*, even assuming that Dr. Olds was a state actor, she is protected by qualified immunity. In *Wyatt*, a private individual made use of a state statute which allowed private individuals to obtain replevin orders simply by posting a bond and filing an affidavit; the state statute gave the court no discretion to deny the writ of replevin. 504 U.S. at 160. The issue decided in *Wyatt* was "whether qualified immunity, as enunciated in *Harlow*, is available for private defendants faced with § 1983 liability for invoking a state replevin, garnishment, or attachment statute. That answer is no." *Id.* at 168-69. That issue is not involved in the case at bar. Instead, the allegation here is that Dr. Olds acted in concert with the Park County Sheriff's Office, by urging Park County to seize the horses and charge Plaintiffs. This allegation of concerted activity allows Dr. Olds to rely upon the doctrine of qualified immunity.

## IV.  Plaintiffs' State Law Malicious Prosecution Claim Fails as a Matter of Law Because Dr. Olds Is Entitled to Immunity Under Colorado Statute.

Plaintiffs' final claim against Dr. Olds is for malicious prosecution under Colorado common law. Plaintiffs contend that The Six Horses were seized, and the criminal case was brought against them, based on Dr. Olds' statements that the horses were starved, mistreated, and suffering from neglect.

Plaintiffs' state law malicious prosecution claim fails as a matter of law because Dr. Olds' statements are privileged under Colorado law. Colorado law

imposes both duties and protections for licensed veterinarians in regard to reporting suspected animal cruelty. Colorado law requires veterinarians to report <u>suspected</u> animal cruelty to local authorities. Colo. Rev. Stat. § 12-64-121(1). Corresponding to this duty to report is immunity for making such reports in good faith:

> A licensed veterinarian who in good faith reports a suspected incident of animal cruelty or animal fighting to the proper authorities in accordance with subsection (1) of this section shall be immune from liability in any civil or criminal action brought against the veterinarian for reporting the incident.

Colo. Rev. Stat. § 12-64-121(4). That section also creates a presumption of the veterinarian's good faith:

> In any civil or criminal proceeding in which the liability of a veterinarian for reporting an incident described in subsection (1) of this section is at issue, the good faith of the veterinarian shall be presumed.

*Id.*

There are four elements for immunity to apply under Colo. Rev. Stat. § 12-64-121(4):  (1) Dr. Olds must be a licensed veterinarian; (2) who reported in good faith; (3) a suspected incident of animal cruelty; (4) to the proper authorities. There is no dispute about elements 1, 3, and 4: Dr. Olds is a licensed veterinarian, her alleged statements concerned a suspected incident of animal cruelty, and she made statements to the Park County Sheriff's Office.

As for the second element of applying the immunity, Plaintiffs cannot offer sufficient evidence to overcome the statutory presumption of good faith. Dr. Olds in good faith suspected (and continues to suspect) that Plaintiffs starved and/or neglected Bear and The Six Horses. Dr. Olds' good faith is statutorily presumed. Colo. Rev. Stat. § 12-64-121(4). There is no dispute that Bear and The Six Horses were too skinny on February 16, 2012. Even Plaintiffs admit as much. While Plaintiffs may disagree about the *cause* of Bear and The Six Horses' skinny condition, the fact of their skinny condition is not in dispute. See e.g., Attachments A and D.  It is undisputed that Bear was down, unable to stand on his own, and covered in urine and manure on February 16, 2012. Dr. Olds also saw Maggie down, emaciated, covered in sores and near death. Even Plaintiffs' own veterinarian, Dr. Horton, believed that The Six Horses "were let go far too long" and that Plaintiffs should have sought intervention sooner. Plaintiff Swift told Dr. Olds that several horses at the ranch had already died that winter. These undisputed facts more than establish that Dr. Olds had reasonable cause to suspect that Bear and The Six Horses had been subjected to cruelty and/or neglect. As the District Court correctly ruled, Plaintiffs simply cannot offer sufficient evidence of bad faith to overcome the statutory presumption coupled with this undisputed evidence.

Plaintiffs argue that Dr. Olds committed malpractice, by failing to conduct a thorough differential diagnosis, but these allegations are irrelevant. This is not a

malpractice case, and Dr. Olds need not prove that her suspicions were correct in order to enjoy statutory immunity. The information required to reach a formal patient diagnosis is not the same thing as the information required to reach a reasonable suspicion, and Plaintiffs cite no legal authority for the proposition that the two issues are one in the same.[9]

The relevant inquiry under the Colorado statute is not whether Dr. Olds satisfied a professional duty of care or rendered a correct diagnosis. Rather, the relevant question is merely whether Dr. Olds had a reasonable good faith basis to suspect that the horses had been subjected to cruelty or neglect. Colo. Rev. Stat. § 12-64-121(4) ("A licensed veterinarian who in good faith reports a suspected incident of animal cruelty or animal fighting to the proper authorities…shall be immune.") The undisputed sight of multiple emaciated, down horses, coupled with reports of several recent horse deaths, are sufficient to satisfy this low statutory standard.

Plaintiffs' argument against statutory immunity is based on an unsupportable interpretation of the statute. Plaintiffs argue that the "reasonable cause" requirement of the statute requires a veterinarian to reach a formal differential

---

[9] An expert witness such as Dr. Questen, Dr. Horton, or Dr. Burton may opine about a veterinarian's professional duty of care in a malpractice setting, but the quantum of evidence required to trigger the immunity under Colo. Rev. Stat. § 12-64-121 is a matter of statutory interpretation and thus a question of law for the court. *Stewart v. Beach*, 701 F.3d 1322, 1334 (10th Cir. 2012).

diagnosis before reporting suspected animal cruelty. (Opening brief at 29.) This

argument misinterprets the plain language of the statute.

The interpretation of a statute is a question of law for the Court, not a

disputed issue of fact. *Stewart v. Beach*, 701 F.3d 1322, 1334 (10th Cir. 2012);

*Cain v. People*, 327 P.3d 249 (Colo. 2014). Contrary to Plaintiffs' suggestion,

Colo. Rev. Stat. § 12-64-121(1) does not require probable cause before its statutory

reporting obligation is triggered and its immunity protection attaches. The statute,

on its face, states otherwise:

> A licensed veterinarian who . . . has reasonable cause to know
> or suspect that the animal has been subjected to cruelty in
> violation of [Colo. Rev. Stat. § 18-9-202], . . . shall report or
> cause a report to be made of the animal cruelty or animal
> fighting to a local law enforcement agency or the bureau of
> animal protection. . . .

> A licensed veterinarian who in good faith reports a suspected
> incident of animal cruelty. . . in accordance with subsection (1)
> of this section shall be immune from liability in any civil or
> criminal action brought against the veterinarian for reporting
> the incident.

Colo. Rev. Stat. § 12-64-121 (1), (4) (emphasis added). As opposed to requiring

"probable cause" of animal cruelty, the statute merely requires "reasonable cause

to know or suspect" cruelty. A reasonable suspicion triggers both the duty to report

and immunity for reporting.

Plaintiffs' statutory construction is contrary to the plain language of the

statute. "Reasonable cause to know or suspect" is not the same thing as probable

42

cause. Probable cause is defined to exist when the objective facts and

circumstances presented are sufficient to induce a person of ordinary prudence and

caution to entertain a reasonable belief that the defendant committed a crime.

*People v. Castaneda*, 249 P.3d 1119, 1122 (Colo. 2011); *People in re M.V.*, 742

P.2d 326, 329 (Colo. 1987). Probable cause requires more than mere suspicion.

*People v. Gutierrez*, 222 P.3d 925, 937 (Colo. 2009) (citing *Brinegar v. United*

*States*, 338 U.S. 160, 175 (1949)). Conversely, Colo. Rev. Stat. § 12-64-121

requires reporting and provides immunity when a veterinarian "has reasonable

cause to know <u>or suspect</u>" animal cruelty. (Emphasis added). This threshold, by its

terms, is something less than probable cause because probable cause requires more

than mere suspicion.[10]

    The court in *Thomas v. Beth Israel Hospital, Inc.*, analyzed the difference

between suspected abuse and a formal diagnosis. 710 F. Supp. at 937-38. In

*Thomas*, the plaintiff sued a hospital after a hospital reported suspected child abuse

under the state's mandatory reporting law. *Id.* The hospital reported the suspected

---

[10] The reporting statute's threshold of "reasonable cause to know or suspect" is more akin to the concept of "reasonable suspicion," which exists when the facts known, taken together with rational inferences from those facts, create a reasonable and articulable suspicion of criminal activity. *See People v. Funez-Paiague*, 276 P.3d 576, 578-79 (Colo. 2012.) "Reasonable suspicion" under Colorado law is something less than probable cause. *People v. Archuleta*, 980 P.2d 509, 512 (Colo. 1999). Plaintiff is simply wrong to suggest that Colo. Rev. Stat. § 12-64-121 requires a veterinarian to have probable cause before the statute's reporting duty and immunity protection attach.

abuse after a hospital doctor examined the child and found multiple abrasions and black and blue marks. *Id.* at 937, 941. While these marks led the hospital to suspect abuse, common sense dictates that such marks could also have resulted from a fall, accident, or any number of other potential causes.

The court in *Thomas* granted the hospital immunity under the state reporting statute despite the hospital's failure to exclude other potential causes for the marks. *Id.* at 942. The court held:

> Dr. Ilano's medical examination of [the child], which revealed multiple abrasions and black and blue marks, both old and new, clearly indicated the possibility of physical abuse or mistreatment and required [the hospital] to file a report of suspected child abuse. [Plaintiff's] allegations of "fraudulent" reporting of child abuse are factually incorrect and insufficient to rebut the statutory presumption that [the hospital] acted in good faith in reporting [the child] as a suspected victim of child abuse. The reporting requirements that trigger the qualified immunity provision of [the state law] are premised not on actual or conclusive proof of abuse, but on reasonable cause to suspect such abuse.

*Id.* at 941-42 (emphasis added).

Much like the reporting statute in *Thomas*, Colo. Rev. Stat. § 12-64-121 merely requires reasonable cause to suspect animal cruelty, not conclusive proof. Nothing in the statute suggests that other potential causes must be excluded before reporting the suspected cruelty. Nothing in the statute suggests that a formal differential diagnosis is required before reporting the suspected cruelty. Instead,

the plain language of the statute merely requires "reasonable cause to know or suspect that the animal has been subjected to cruelty."

Finally, it should be noted that Plaintiffs' opening brief essentially concedes that Dr. Olds enjoyed statutory immunity for her reporting, but then points to other alleged conduct as supporting the malicious prosecution claim:

> If Dr. Olds had immunity it was only with respect to the comments she made while on the ranch on February 16, 2012 and the e-mail she sent to Deputy Hardey the same day. If that was all she did, it is doubtful that she would have been sued.

(Opening Brief at 29.) The problem with this argument is that Plaintiffs can offer no evidence after the comments and email on February 16 that would support a malicious prosecution claim. While Plaintiffs suggest that Dr. Olds was somehow behind the so-called "public outcry," the record offers little if any admissible evidence to support this attribution. Even assuming that Dr. Olds advocated for the seizure of The Six Horses and the prosecution of Plaintiffs outside of her oral and written reporting to Park County, there is no evidence that Dr. Olds was somehow behind the criminal prosecution or responsible for its pursuit. As the District Court correctly observed, there was insufficient evidence "to create a material issue of fact as to whether the so called 'public outcry' had any influence on the decision to prosecute Plaintiffs on animal cruelty charges. *** As to the decision to prosecute Plaintiffs under animal cruelty charges, Plaintiffs have similarly presented no evidence indicating that there was any connection between Dr. Olds' actions and

45

the decision by the District Attorney to prosecute Plaintiffs in the criminal case then pending against them." (Aplee. Supp. App. at 587-588.)

## V. Plaintiffs' State Law Malicious Prosecution Claim Against Dr. Olds Fails as a Matter of Law Even in The Absence of Statutory Immunity.

Even without considering statutory immunity, Plaintiffs' malicious prosecution claim fails because Plaintiffs cannot prove the essential element of lack of probable cause. To prevail on a claim for malicious prosecution, the following elements must be satisfied: (1) the defendant contributed to bringing a prior action against the plaintiff; (2) the prior action ended in favor of the plaintiff; (3) no probable cause; (4) malice; and (5) damages. *Hewitt v. Rice*, 154 P.3d 408, 411 (Colo. 2007); *Thompson v. Hiwan Ridge Dev. Co., Inc.*, 84 P.3d 496, 503 (Colo. 2004); *Lounder v. Jacobs*, 205 P.2d 236, 238-39 (Colo. 1949). Lack of probable cause is an indispensable element. *Hewitt*, 154 P.3d at 411; *Montgomery Ward & Co. v. Pherson*, 272 P.2d 643, 645 (Colo. 1954) ("The existence of probable cause is alone sufficient to relieve a defendant of a charge of malicious prosecution."). Plaintiffs bear the burden of creating a disputed issue that the prosecution occurred without probable cause. *Hewitt*, 154 P.3d at 411; *Thompson*, 84 P.3d at 503; *Lounder*, 205 P.2d at 238-39.

Whether a given set of facts amounts to probable cause is a question of law for the Court. *Montgomery Ward*, 272 P.2d at 646 (citing *Gurley v. Tomkins*, 30 P.

46

344, 439 (Colo. 1892)). The usual standards of human judgment and conduct determine what is and what is not probable cause. *Montgomery Ward*, 272 P.2d at 645 (citing *Lounder*, 205 P.2d at 239). Where the conceded or substantially undisputed facts and circumstances under which the prosecution was carried on do not show a want of probable cause, the court should take the responsibility of directing a verdict in favor of the defendant. *Montgomery Ward*, 272 P.2d at 646 (citing *Gurley*, 30 P. 349). It is only where there is a dispute as to the existence of those facts which are relied upon as constituting probable cause that the matter is to be determined by the jury. *Konas v. Red Owl Stores, Inc.*, 404 P.2d 546, 548 (Colo. 1965); *Montgomery Ward*, 272 P.2d at 646. To constitute probable cause, it is only necessary that there be a belief held in good faith in the guilt of the accused, and that such belief be reasonable and prudent. *Konas*, 404 P.2d at 548.

In defining probable cause for purposes of malicious prosecution, the Colorado Supreme Court stated:

> [a defendant] must form his judgment from outside appearances; and if those appearances, although they have belied the facts, furnished a reasonable ground of suspicion and were of such a nature as to warrant a person of ordinary caution, in coming to the conclusion that a crime had probably been committed, the defendant, by following the appearances, and acting upon the conclusion to which they led, incurred no liability to the plaintiff."

*Id.* (quoting *Florence Oil & Refining Co. v. Huff*, 59 P. 624 (Colo. 1900)). In other words, to constitute probable cause it is only necessary that there be a belief held in

good faith in the guilt of the accused, and that such belief be reasonable and prudent. *Id.*

The defendant may have had probable cause for the filing of charges even though the accused is later acquitted or subsequent events prove the charges to be erroneous. *Montgomery Ward*, 272 P.2d at 508. Any citizen who has reasonable grounds to believe that the law has been violated has the right to cause the arrest of the person whom she honestly and in good faith believes to be the offender, and, if she has reasonable grounds for his belief and acts thereon in good faith, she shall not be subjected to damages merely because the accused is not convicted. *Id*. This is particularly true when the proceeding at issue was instituted by and with the approval of the district attorney:

> If the [district attorneys], who are appointed on account of their legal learning, consider that a given state of facts is sufficient evidence of probable cause, how can the private citizen be said to be in fault in acting upon such facts, and how can the state condemn him to damages for so doing?

*Id.* at 647-48.

Finally, and perhaps most importantly, "if a magistrate binds over a person charged with a criminal offense, this establishes a rebuttable presumption of probable cause for purposes of a subsequent malicious prosecution claim." *Schenck v. Minolta Office Systems, Inc.*, 802 P.2d 1131, 1133 (Colo. App. 1990).

Here, the undisputed materials facts demonstrate there was sufficient probable cause to support the prosecution. The court in the underlying criminal case confirmed the existence of probable cause on two separate occasions. This establishes a rebuttal presumption of probable cause that Plaintiffs have not and cannot overcome. The affidavit by District Attorney LeDoux establishes his independent belief that probable cause existed.

Finally, all of the undisputed facts set forth in detail herein support a finding of probable cause, including: (i) The Six Horses were too skinny; (ii) Bear and Maggie were in deplorable condition; (iii) Plaintiffs' own veterinarian believed that these horses "were let go far too long;" (iv) several horses at the ranch had already died, and (v) after his removal from the ranch, Bear had a voracious appetite and quickly recovered. As the District Court correctly ruled, "Plaintiffs' [malicious prosecution] claim still fails on the grounds that Plaintiffs are unable to show that the prosecution occurred without probable cause. *** Probable cause clearly existed in this case." (Aplee. Supp. App. at 591-592, n. 2)

Because these material facts are not in dispute, the absence of probable cause is a matter of law for the Court to decide. Because the undisputed facts gave Dr. Olds a sufficient basis to form her reasonable good faith belief in Plaintiffs' guilt, Plaintiffs' malicious prosecution claim fails as a matter of law.

## STATEMENT OF COUNSEL AS TO ORAL ARGUMENT

Oral argument is requested. Although the District Court's written order is detailed and fully explains the basis for the judgment, oral argument may be useful if this Court has any questions.

## CONCLUSION

For these reasons, the judgment of the District Court should be affirmed.

Respectfully submitted,

JOHN LEBSACK
ADAM GOLDSTEIN


By:     /S/ John Lebsack
White and Steele, P.C.
Dominion Towers, North Tower
600 17th Street, Suite 600N
Denver, Colorado 80202
(303) 296-2828
jlebsack@wsteele.com
agoldstein@wsteele.com

## Certificate of Compliance

**Section 1. Word Count**

As required by Fed. R. App. P. 32(a)(7)(c), I certify that this brief is proportionally spaced and contains 12,035 words,

Complete one of the follow:

⊠I relied on my word processor to obtain the count and it is Word Version X:

☐ I counted five characters per word, counting all characters including citations and                    numerals.

I certify that the information on this form is true and correct of the best of my knowledge and belief formed after a reasonable inquiry.

By:    /S/John Lebsack
       White and Steele, P.C.

51

## CERTIFICATE OF DIGITAL SUBMISSION AND PRIVACY REDACTIONS

I hereby certify that a copy of the foregoing **APPELLEE'S ANSWER BRIEF**, as submitted in Digital Form via the court's ECF system, is an exact copy of the written document filed with the Clerk and has been scanned for viruses with the McAfee AntiVirus Enterprise and McAfee AntiSpyware Enterprise version 8.8.0.1528, Virus Definition File Dated: 6/15/2016 rev 8197 and, according to the program is free of viruses. In addition, I certify all required privacy redactions have been made.

By:   /S/Becky Kongs_____
      Legal Assistant

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing **APPELLEE'S ANSWER BRIEF** was furnished through (ECF) electronic service to the following on this the 20th day of June, 2016.

Brice A. Tondre
215 S. Wadsworth Blvd, #500
Lakewood, CO 80226-1566

By:     /S/Becky Kongs
        Legal Assistant